HOOD, Judge.
This is an action for damages instituted by plaintiff individually and for the use and benefit of his minor son, Raphael Le-Blanc, for personal injuries sustained by his son when he was struck by an automobile being driven by defendant, Oscar E. Gau-thier, Jr. After trial, judgment was render *268 ed by the trial court in favor of defendant, and plaintiff has appealed.
The accident occurred about 4:15 p. m. on November 30, 1962, on U. S. Highway 190 in St. Landry Parish. The highway at that point runs east and west and is paved with concrete. Shortly before the accident occurred, Raphael, who was sixteen years of age, was being transported from school to his home on a school bus. The bus had been traveling in a westerly direction on the highway, but just before the accident occurred the driver pulled to his left and brought the bus to a stop on the south shoulder of the road, completely off the hard surfaced portion of the highway. While stopped in that position a number of students alighted from the bus, Raphael being one of them. Soon after getting off the bus, Raphael was struck by an automobile which was being driven by defendant in an easterly direction on the highway, the accident occurring several feet east of the point where the bus had stopped. As a result of that accident Raphael sustained serious personal injuries.
The principal issues presented are factual, and they relate to the question of how and where the accident occurred. There is an irreconcilable conflict between the testimony given by some of the witnesses called by plaintiff and that given by some of defendant’s witnesses as to these issues. The testimony of plaintiff’s son, and six of the students who were either in the bus or had just alighted from it when the accident occurred, is to the effect that plaintiff was one of the first students to get out of the bus when it stopped, that after alighting from it he immediately began walking in an easterly direction on the south shoulder of the highway toward his home, that defendant’s car, which was being driven in an easterly direction, passed the school bus, and then immediately turned or skidded to its right onto the south shoulder of the highway where it struck Raphael. Although these witnesses were vague and indefinite as to whether Raphael had crossed to the north side of the highway before the accident occurred, they were firm in their testimony that he was on the south shoulder when he was struck, and that the point of impact, therefore, was on the south shoulder of the highway.
The defendant testified that while driving in an easterly direction, and when he reached a point about one block from the place where the accident occurred, he observed Raphael on the north side of the highway near some mailboxes which were located there, that the boy then left the mailboxes and started to walk in an easterly direction along the north shoulder of the highway, and that after taking only a few steps in that direction, Raphael suddenly turned to his right and ran or darted in a southerly direction across the highway directly in front of defendant’s car. Defendant testified that he immediately applied his brakes and turned to his right in an attempt to avoid the accident, but that the boy nevertheless was struck at a point on the concrete slab about in the center of the south, or eastbound, lane of traffic. There were six passengers in the car with defendant at the time of the accident. Five of them testified at the trial, and their testimony fully supports defendant’s version of the facts. All of the occupants of defendant’s car state that the accident occurred about in the center of the eastbound lane of traffic.
The evidence shows that some mailboxes are located on the north side of the highway, almost opposite the place where the bus had been stopped, that the mailbox of Raphael’s parents was among them, and that “most of the time, but not every day” Raphael walked across the highway to check the mail in the family mailbox immediately after he alighted from the school bus. Raphael testified that he does not remember whether he went to the mailboxes immediately before this accident occurred, but that he is “just about positive” that he did not. All of the students who testified in plaintiff’s behalf stated that they did not know whether Raphael had crossed to the *269 north side of the highway before the accident occurred, although, as we have already mentioned, each was certain that the point of impact was on the south shoulder of the highway.
Defendant’s position that Raphael did cross to the north side of the highway, and that the accident occurred in the eastbound lane of traffic, is strongly supported by the testimony of Mrs. Preston Stelly, who lives on the south side of the highway directly opposite the place where the mailboxes are located. She testified that she saw Raphael cross to the north side of the highway after he alighted from the bus, that she saw him stoop over and peer into the mailboxes, and that the accident happened only a “few seconds” later. Also, Sergeant O. S. Young, a state trooper who arrived at the scene of the accident shortly after it occurred, testified that immediately after he got there Raphael told him, “I go get the mail in the afternoon when I get off the school bus. I had gone to the mailbox and I was returning on this side when something hit me.”
We think the evidence clearly supports the trial judge’s finding that Raphael had crossed to the north side of the highway after he alighted from the school bus and before the accident occurred.
Plaintiff, although maintaining primarily that his son had not crossed to the north side of the highway, argues alternatively that even if he did go to the mailboxes after alighting from the bus, he had returned to the south side of the highway and was walking in an easterly direction on the south shoulder of the highway when the accident occurred. In support of that argument, he relies on the testimony of the students who had been on the bus with Raphael before the accident occurred, and on evidence which was presented as to physical facts surrounding the accident. Among this latter type of evidence is the testimony of Mrs. LeBlanc, the mother of Raphael, to the effect that within a very few minutes after the accident occurred she found a shoe, a book, a pen and a bottle of ink, all belonging to her son, on the south shoulder of the highway, or in the grass near the shoulder. She and plaintiff also noted skid marks which apparently had been made by defendant’s car as it was turned to the right and skidded in a southeasterly direction off the south side of the highway, and Mrs. LeBlanc states that the articles belonging to her son which she found on the shoulder were in line with these skid marks.
Neither the state trooper who investigated the accident, nor any other witness, found any debris or evidence which would indicate where the impact occurred. The left front portion of defendant’s car struck plaintiff, and the evidence shows that after he was struck the boy’s body was hurled into the air and against the windshield of the car, and that he was carried or knocked a considerable distance before he landed on the ground. In his petition plaintiff alleges that his son was thrown “not less than 80-90 feet through the air.” One of the eyewitnesses estimates the distance at 30 feet, but all agree that Raphael’s body eventually went over the top of the car and was carried some distance from the point where he was struck before it came to rest in a ditch which runs along the south side of the south shoulder. Since the car was traveling in a southeasterly direction at the time the collision occurred, and since the blow was of such a nature that it carried or knocked Raphael a considerable distance. in that direction, it would not be illogical to reason that the articles found by Mrs. LeBlanc on the shoulder of the road could have been knocked there by the car, whether the point of impact was on the pavement or on the shoulder. At any rate, the fact that these articles were found on the south shoulder of the highway does not establish that the collision occurred on the shoulder.
The trial judge, accepting defendant’s version of the facts, concluded that Raphael was struck while he was cross *270 ing from the north to the south side of the highway. The trial judge’s findings of fact, particularly those involving the credibility of witnesses testifying before him, are entitled to great weight on appeal, and his conclusions as to the facts will not be disturbed unless found to be clearly erroneous. Hudson v. Arceneaux, La.App. 3 Cir., 169 So.2d 731.
In the instant suit we think the evidence supports the factual conclusions reached by the trial court. We are convinced, as was the trial judge, that the boy was struck as he ran or darted from the north to the south side of the highway in front of defendant’s car, and that the point of impact was in the eastbound lane of traffic.
Plaintiff contends further, however, that defendant was negligent in driving at an excessive rate of speed, and that his negligence in that respect was a proximate cause of the accident. Defendant and most of the occupants of his car testified that he was driving at a speed of from 45 to 50 miles per hour, which was well within the 60-mile per hour speed limit at that point. The state trooper who investigated the accident estimated defendant’s speed at 60 miles per hour, simply because he figured that he was going more than 50 miles per hour. And one of plaintiff’s witnesses, a student who had been on the bus with Raphael, estimated the speed at 80 to 90 miles per hour.
The evidence shows that the car travelled a distance of 210 feet from the point where the skid marks first began to the place where the car came to rest after the accident. While traveling that distance, it crossed a ditch, hit a 'guy line on a utility pole, crossed another ditch, hit a fence and then stopped on the front lawn of a residence on the south side of the highway. Plaintiff contends that these last mentioned facts show that the car must have been traveling at a very fast rate of speed, and that because of this speed defendant lost control of his car when he applied his brakes after observing the school children and the school bus in that area.
The state trooper who investigated the accident testified that the brakes on the car had been applied continuously from the time the skid marks first appeared on the pavement until after the car left the road. After leaving the road, however, he noted that the brakes were not applied continuously, that the car had skidded sideways, and that at one point the wheels were spinning as though' the car was being accelerated. The probable explanation of this, as given by the trooper, is that when the car was out of control defendant’s foot apparently slipped off the brake and hit the accelerator. But, whatever the reason, the car obviously was under some power for a part of the 210 feet it travelled, and it did not skid that entire distance.
The fact that the car travelled this distance after the brakes had been applied indicates that it was traveling at a relatively fast rate of speed. We are not convinced, however, that it was traveling at a speed in excess of that estimated by defendant’s witnesses, or by the state trooper, which was within the legal speed limit and we think reasonable under the circumstances.
Finally, plaintiff contends that the trial court erred: (1) In refusing to permit him to call as rebuttal witnesses persons who had previously testified but who thereafter had remained in the courtroom in-violation of the court’s order that the witnesses be separated; and (2) in refusing to permit plaintiff to call as a witness another person who had not been sequestered and who had remained in the courtroom throughout the trial. The record shows that a separation of the witnesses was ordered by the court at the beginning of the trial, at the request of counsel for plaintiff. The trial was completed and both parties rested, with the right reserved to plain *271 tiff to call one specific witness at a later date. The trial was resumed at the later date, and the witness for whose testimony the case had been held open was called by plaintiff and he testified. After that testimony had been received, plaintiff then demanded that he be permitted to call additional witnesses who had remained in the courtroom during the original trial, and the court sustained defendant’s objection to the calling of these witnesses. There is no showing that plaintiff was misled or that an injustice will result from the ruling. There appears to be no reason why plaintiff should not have discovered or anticipated the evidence which he desired to elicit from these witnesses prior to the trial, so that they also could have been sequestered. Under the circumstances presented here we find no abuse of discretion on the part of the trial judge in refusing to permit plaintiff to call these additional rebuttal witnesses. See Wilson v. Marquette Casualty Company et al., La.App. 4 Cir., 156 So.2d 331 (cert. denied).
We find no error in the trial court’s conclusion that Raphael was negligent in failing to observe defendant’s approaching car and in leaving a place of safety and darting into the path of that car. We think his negligence in that respect was the sole and proximate cause of the accident. See Montgomery et al. v. Louisiana Power & Light Company et al., La.App. 2 Cir., 84 So.2d 268; Reeves v. Southern Farm Bureau Casualty Insurance Co., La.App. 3 Cir., 163 So.2d 169; Fontenot v. Travelers Indemnity Co., La.App. 3 Cir., 134 So.2d 330; Jones et al. v. Schule, La.App. 2 Cir., 81 So.2d 572; and Duet v. Terrebonne et al., La.App. 1 Cir., 52 So.2d 263.
For the reasons herein set out, therefore, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.