264 So.2d 779 (1972)
STATE of Louisiana In the INTEREST of Roy Wilburn BRECHEEN.
No. 8630.
Court of Appeal of Louisiana, First Circuit.
June 26, 1972.
Rehearing Denied July 28, 1972.
Writ Refused September 28, 1972.
*780 Samuel T. Rowe, Livingston, and L. B. Ponder, Jr., Amite, for appellant.
Erlo Durbin, Asst. Dist. Atty., Denham Springs, and Robert Williams, Baton Rouge, for appellee.
Before LOTTINGER, SARTAIN and ELLIS, JJ.
SARTAIN, Judge.
Roy Wilburn Brecheen, age fourteen, appeals from an adjudication of juvenile delinquency by the Second Ward City Court, City of Denham Springs, Parish of Livingston, Louisiana, on a petition of the State in the interest of the youth, which petition alleged that young Brecheen "did unlawfully kill one Ronald Mitchell, in the City of Denham Springs, Second Ward, Parish of Livingston, Louisiana, by shooting him with a pistol;". When this matter was originally before us we remanded it because the record failed to contain an order of adjudication of delinquency and commitment. State v. Brecheen, La.App., 256 So.2d 793. These defects have now been corrected and we address ourself to the merits of the case.
Immediately following the filing of the petition, appellant excepted to the jurisdiction of the court and asked that the charge of delinquency be "quashed". He contends that the court, a quo, by virtue of its creation, is not vested with juvenile jurisdiction. He argues that a juvenile court must be created by the Constitution or an amendment to the Constitution and that the purported vesting of juvenile jurisdiction in the Second Ward City Court of Denham Springs by an act of the Legislature is violative of the Constitution and amounts to an encroachment upon the judicial branch of government. The Second Ward City Court was created pursuant to Act No. 130 *781 of 1964 (R.S. 13:1872). A brief discussion of the manner in which city courts were formerly created is in order. Prior to 1956 the Legislature, from time to time, adopted general and special legislation abolishing the Justice of the Peace courts and creating in their stead city courts with varying civil and criminal jurisdiction. It is recognized that Act No. 326 of 1956 was an attempt by the Legislature to achieve some measure of uniformity in the area of the creation and jurisdiction of city courts.[1] 7 La.L.Rev. 38. In 1953 R.S. 13:1870 (since repealed) listed some twenty special acts creating city courts. It is also clear that Act No. 130 of 1964 was a further attempt by the Legislature to unify the procedure to be followed in the creation of a city court. Essentially, a special act of the Legislature is no longer required so long as the guidelines set forth in Act No. 130 of 1964 (R.S. 13:1872[a]) are followed. A city court may now be established by a favorable vote of the electorate in a ward containing a city of five thousand inhabitants.
Article VII, Section 51, subd. A of the Louisiana Constitution grants to the Legislature the power to abolish Justice of the Peace courts in wards containing cities of more than five thousand inhabitants and to create in their stead courts with such civil jurisdiction as is now vested in Justice of the Peace courts "and with criminal jurisdiction which shall not extend beyond the trial of offenses not punishable by imprisonment at hard labor under the laws of this state . . ." Section 52 of the same article provides: "In ward or wards wherein there exists a City Court created under the provisions of Section 51 of Article VII of this Constitution, the judge of said City Court shall be ex officio judge of the Juvenile Court within his jurisdiction." Such jurisdiction shall be concurrent with that of the district court and the judge thereof is possessed of all powers now conferred on judges of the district court acting as judges of a juvenile court. It appears clear to us that the creation of city or ward courts pursuant to R.S. 13:1872(A) is constitutionally sanctioned and does not violate our traditional concept of the separation of powers between the legislative, executive and judicial branches of government.
Appellant further contends that the Second Ward City Court is without authority to adjudicate young Brecheen a delinquent because the offense that he is alleged to have committed is "manslaughter" which requires imprisonment at hard labor. In this connection, appellant obviously is referring to that portion of Article VII, Section 51 subd. A, supra, which limits its jurisdiction in criminal matters to the trial of offenses not punishable by imprisonment at hard labor. Counsel for appellant has not given proper consideration to that portion of Section 52 which relates to juvenile jurisdiction in general. The pertinent part reads as follows:
"Jurisdiction. The said Courts shall have jurisdiction, except for capital crimes and crimes defined by any law defining attempted aggravated rape if committed by children fifteen years of age or older, of cases of the State of Louisiana in the interest of children under seventeen years of age, as may be provided by the Legislature, brought before said Courts as delinquent or neglected children and of the trial of all persons charged with the violation of any law nor in existence or hereafter enacted for the protection of the physical, moral or mental well-being of children under seventeen years of age, not punishable by death or hard labor. Said Court shall also have jurisdiction of all cases of desertion or nonsupport of children *782 by either parent, or nonsupport of a wife by her husband, and also of the adoption of children under seventeen years of age."
The clear import of this provision has been uniformly interpreted by our courts to the effect that all young persons under the age of seventeen are legally incapable of committing a "crime" but that the commission of an offense subjects them to be brought before a juvenile court as a delinquent. The exceptions to this rule are capital crimes including attempted aggravated rape but even in these latter cases the juvenile must have reached the age of fifteen. Young Brecheen was fourteen at the time of the incident and hence could not be charged with a capital or noncapital offense. The case of State v. Schexnaydre, 215 So.2d 370 (4th La.App., 1968) cited by appellant is not authority for the argument that the juvenile here could not be tried or charged with a lesser offense than manslaughter because in Schexnaydre the juveniles there were fifteen and were charged with murder, which clearly brought them beyond the purview of our juvenile statutes. Brecheen is not being tried for a lesser offense, he is being charged as a delinquent for having committed an offense which is violative of the law. State v. Schexnaydre, supra; R.S. 13:1570(5); La.Const. of 1921, Art. VII, Sec. 10(5); State v. Malone, 156 La. 617, 100 So. 788 (1924). For a comprehensive article on the history, purpose, and procedure in a juvenile matter see Hargrave, Fairness in Juvenile Court, XXVII L.L.R. 606.
The remaining question posed is whether or not the Second Ward City Court is also vested with juvenile jurisdiction. We conclude that it is. The clear import of Sections 51 and 52 of Article VII of the Constitution is to provide for the creation of city courts and to define their jurisdiction. When these two sections are considered in pari materia, all city courts of similar origin are uniform as to jurisdiction. This we believe to be the intent of the articles. R.S. 13:1872, as amended by Act No. 30 of 1964, reflects the Legislature's response to the prerogatives granted to it by the Constitution.
Prior to the commencement of the hearing counsel for appellant called for a separation of the witnesses. The trial judge ordered the same but permitted the fathers of young Brecheen and the deceased youth to remain in the courtroom. Appellant contends that the trial judge erred in allowing the latter to be present during the course of the hearing. It is urged that this error justifies either a reversal or a new trial. R.S. 13:1579 requires that juvenile matters be heard separately from cases against adults and the general public is excluded. However, the statute permits the presence of "such persons admitted as have a direct interest in the case". The deceased youth's father, of course, has a direct interest in the matter and we see nothing prejudicial to appellant's cause by the father's presence. The rules generally applicable to the separation of witnesses were not violated here. The father was not called as a witness, did not testify, nor is there any indication in the record that he breached the rule by conveying to others what transpired during the course of the proceeding. The trial judge is accorded considerable discretion in determining the manner in which a hearing is to be conducted. Only when there is a showing that the judge has abused this discretion will an appellate court intervene. LeBlanc v. Gauthier, 174 So.2d 267 (3rd La.App., 1965); and, Wilson v. Marquette Cas. Co., 156 So.2d 331 (4th La.App., 1963), writs refused 245 La. 96, 157 So.2d 331.
Appellants next assignment of error pertains to the improper admission of an alleged confession and/or statement made by young Brecheen together with the admission of hearsay and opinion evidence, violative of In Re State In The Interest of Elliot, 206 So.2d 802 (2nd La.App.1968) and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Elliot stands *783 for the proposition that, although R.S. 13:1579.1 permits the court, in its discretion, to accept hearsay and opinion evidence, such evidence cannot form the basis for an adjudication of delinquency. We view the statute as permitting such information as is generally given to a judge in a criminal matter who asks for a post-sentence investigation. In a juvenile proceeding such information may be used in the dispositive phase of the matter, i. e., whether the child shall be placed on probation, committed to a special school, or a training institution. The United States Supreme Court in In Re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527, made it perfectly clear that opinion evidence and exparte statements are not admissible at the adjudicatory stage of a juvenile proceeding. The record before us contains no ex parte hearsay or opinion evidence and therefore the objection is without merit.
It is contended by appellant that a statement made by young Brecheen was inadmissible because he had not been advised of his right to counsel. The only statement made by the youth prior to the time he was advised of his rights was one made to a police officer at the scene of the incident. The officer arrived and found a group of adults and young people near the scene where the fatality occurred. He asked what happened and Brecheen, who was sitting in the car near where the body of young Ronald Mitchell had lain, stated, "I shot him." The officer testified that the question was not directed to Brecheen but to the assembled group and it was Brecheen who voluntarily responded.
Assuming, arguendo, that the admission of this type of question and response into evidence was in error, it was not prejudicial to the juvenile because, on advice of counsel, the lad took the stand in his own defense and admitted firing the fatal shot. The child's testimony is corroborative of that of the investigating officer and was freely given. When young Brecheen was later taken directly to the police station he was advised of his rights and was immediately afforded legal counsel.
Appellant's last assignment of error other than that of the conclusion of the trial judge was that it was error to admit into evidence the .22 pistol which was involved in the incident. Counsel claims that the pistol was not properly preserved as an exhibit under existing law. This objection is without merit. Again, young Brecheen testified and identified the pistol. Accordingly, we do not have a question of association between the owner and the user of a weapon. The weapon itself was not a crucial piece of evidence that had to be protected against mutilation or tampering. Brecheen urged that the incident was provoked by the deceased youth and that his pointing the pistol at the latter was an action of self-defense. He further claims that because of the "hair trigger" nature of the weapon, it involuntarily discharged. The testimony in the record pertaining to the pistol was in response to questions propounded by appellant's counsel in defense of the youth. Under these circumstances, the introduction of the weapon itself was not prejudicial.
Lastly, appellant argues that the plea of self-defense should have been sustained by the trier of fact. We have examined the record carefully and do not find any justification for reversal. All of the facts surrounding this unfortunate incident were carefully related to the trial judge in response to questions by counsel for the State and the juvenile. This was done in a truly, though confidential, adversary manner. The record fully supports the decision of the juvenile court and its decision both as to an adjudication of delinquency and of commitment are affirmed.
Affirmed.
NOTES
[1] See State v. Mayor and Board of Aldermen, 204 La. 940, 16 So.2d 527 (1944). The issue was not raised but the decision impliedly recognized that a special legislative act is not necessary to create a City Court. See also Op. of Atty. General, 1952-54, page 32.