617 So.2d 219 (1993)
STATE of Louisiana in the Interest of the Minor G.M., JR.
No. 92-KA-1004.
Court of Appeal of Louisiana, Fifth Circuit.
April 14, 1993.
*220 John M. Mamoulides, Dist. Atty., Joan S. Benge, Dorothy A. Pendergast, Craig Gibbs, Asst. Dist. Attys., Gretna, for appellee.
John D. Rawls, Gretna, for appellant.
Before KLIEBERT, WICKER and GOTHARD, JJ.
WICKER, Judge.
This appeal arises from the defendant's being adjudicated a delinquent based on violation of La.R.S. 14:34.1, second degree battery. The defendant was committed to the Department of Public Safety and Corrections/Louisiana Training Institute for three years, with credit for time served. We affirm.
On appeal defense counsel assigns the following errors:
1. The trial court erred in refusing to enter a directed verdict on the charge of second degree battery, and
2. The state failed to prove second degree battery beyond a reasonable doubt.
The testimony at trial set forth the following.
Shelly Lawson testified she was standing in front of her residence on Mt. Rushmore Street in Marrero talking to the male victim. As they talked, the defendant walked up and hit the victim on the side of his face for no apparent reason. On cross-examination, Lawson testified she was talking to the victim to ask him why he wanted to fight her because earlier she had heard from the defendant and her brother that the victim wanted to fight her. According to Lawson, after the defendant hit the victim, the victim slowly fell down as if he had passed out. When the victim tried to get up, he fell again hitting his head on the pavement.
The state also called Mary Gisclair, another witness to the incident, to testify. Her testimony differed somewhat from that of Lawson. Gisclair testified that as Lawson was talking to the victim, a boy whom she did not know walked up to the victim and punched him, although it did not seem to be a hard punch. When the defendant threw the punch, the victim lost his balance, slipped and hit his head on the pavement. According to this witness, the victim did not get up a second time after the punch. When it looked as though the victim was unconscious, Gisclair ran to get help.
The victim's father testified that when he went outside he saw his son laying in the street. The victim was flushed, with a purple color to him, and was trembling. At one point, the father was unable to find a pulse, but when the victim had "like a seizure", his pulse returned and he started breathing. The father observed the victim had a big knot on the side of his head and some blood on the back of his neck. An ambulance arrived and the victim was rushed to the hospital where he underwent surgery.
Dr. Frank Culicchia, a neurosurgeon, testified that he first saw the victim in the emergency room at West Jefferson Hospital. Upon the victim's arrival, he was in a *221 deep coma, and did not respond to any sort of verbal stimulus nor did he respond appropriately to any painful stimulus. Because the victim's responses indicated a very severe injury to his brain, a CAT scan of his head was done. This test showed a very large blood clot in the back part of his head in an unusual spot which indicated to the doctor that the victim had received a very significant blow to the cranium. During his examination, the doctor observed that the victim had some bruising and swelling in his face and also had a very large bruise on the opposite side in the back part of his head. The doctor testified that when he last saw the victim, he was beginning to follow simple commands although he was still unable to talk. The victim was subsequently transferred to a rehabilitation unit and at the time of this adjudication hearing, he was still hospitalized.
After the state presented its evidence, defense counsel moved for a directed verdict which was denied by the trial judge.
Subsequently, defense counsel presented its witnesses. Brooke Rodriguez testified that several people were talking when Lawson confronted the victim to ask him why he wanted to fight her. As they were talking, the defendant hit the victim, causing him to fall to the ground, as though he was unconscious.
Jason St. Amant testified that the victim had his fists balled, walking towards Lawson. As a result, the defendant punched the victim. When the defendant hit the victim, the victim tried to catch himself. The victim's hand slipped from underneath him, and he fell and hit his hand on the curb. According to this witness, the victim looked unconscious when the defendant hit him.
After considering the testimony of these witnesses, the judge adjudicated the juvenile delinquent as charged.
As the two assignments relate to sufficiency, they will be addressed together. However, it is noted that a standard different than that enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is applied in determining whether the trial judge erred in refusing to enter a directed verdict. Although defense counsel termed her motion as one for a directed verdict, it is more properly called a "motion for acquittal." La.C.Cr.P. art. 778.
A motion for acquittal is governed by La.C.Cr.P. art. 778 which reads as follows:
In a trial by the judge alone the court shall enter a judgment of acquittal on one or more of the offenses charged, on its own motion or on that of defendant, after the close of the state's evidence or of all the evidence, if the evidence is insufficient to sustain a conviction.
If the court denies a defendant's motion for a judgment of acquittal at the close of the state's case, the defendant may offer its evidence in defense.
A motion for judgment of acquittal raises a sufficiency question. The Louisiana Supreme Court in State v. Hargrave, 411 So.2d 1058, 1061 (La.1982) held that "[t]he denial of such a motion may be reversed on appeal only if there is no evidence of the crime or an essential element thereof or where the denial is a palpable abuse of discretion. State v. Vaughn, 378 So.2d 905 (La.1979)."
With regard to the standard used in determining the sufficiency of the evidence, we note that in order for the court to adjudicate a child delinquent, the state must prove beyond a reasonable doubt that the child committed a delinquent act alleged in the petition. La.Ch.C. art. 883. That burden of proof standard is no less strenuous than the proof standard required in a criminal proceeding against an adult. The due process standards announced in Jackson v. Virginia, supra apply in evaluating the sufficiency of evidence to support an adjudication of delinquency in a juvenile matter. Under Jackson, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found defendant guilty beyond a reasonable doubt. State in Interest of D.R., 560 So.2d 57 (La.App. 5th Cir.1990).
*222 In the present case, the defendant was adjudicated a delinquent for the commission of second degree battery. La.R.S. 14:34.1 defines second degree battery as follows:
Second degree battery is a battery[1] committed without the consent of the victim when the offender intentionally inflicts serious bodily injury.
For purposes of this article, serious bodily injury means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death. (Footnote added).
To convict a person of second degree battery, the state must prove the following elements beyond a reasonable doubt: (1) the intentional use of force or violence upon the person of another; (2) without the consent of the victim; and, (3) when the offender has specific intent to inflict serious bodily injury. State v. Fuller, 414 So.2d 306 (La.1982).
Second degree battery is a crime requiring specific intent. State v. Fuller, supra. Specific intent exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La.R.S. 14:10(1). Specific intent is a state of mind and, as such, need not be proven as a fact but may be inferred from the circumstances and actions of the accused. State v. Graham, 420 So.2d 1126 (La.1982). The determination of whether the requisite intent is present in a criminal case is for the trier of fact, and a review of the correctness of this determination is to be guided by the Jackson standard. State v. Huizar, 414 So.2d 741 (La.1982).
Defense counsel argues that the defendant should have been adjudicated delinquent for simple battery as opposed to second degree battery because the juvenile did not intentionally inflict serious bodily injury. Defense counsel further argues that "no rational finder of fact could have heard this testimony without having a nagging and reasonable doubt as to whether the blow struck by the Appellant caused the victim's loss of consciousness." More specifically, it is argued that the trial court committed reversible error when it failed to consider the very reasonable hypothesis that Dr. Culicchia found no protective abrasions because the victim slipped while fully conscious. He contends the trial judge should have considered evidence which allegedly supported the "slipping" hypothesis.
Two witnesses testified that the victim slipped. Gisclair testified the victim slipped. She demonstrated the manner in which he slipped to the trial judge but the record does not indicate that nonverbal description. She stated, "He fell this way [emphasis added]." St. Amant also testified the victim slipped but his testimony was more descriptive of the manner in which he slipped. He stated:
Well, when [the defendant] hit him and he was going to fall he was still conscious. [The victim] knew what was going on and he went to try to catch himself and his hand slipped from underneath him and that's when he fell. When he caught himself he was leaned back and his arms were kind of in and his body was further back and his hands slipped forward and he fell. He was still conscious when the defendant hit him. [emphasis added].
St. Amant described actions taken by the victim to protect himself for what he allegedly knew to be a fall. However, Dr. Culicchia examined the victim after the incident and found no abrasions on the victim's hands, elbows, knees or any other spot indicative of protective measures being taken.
Although the doctor admitted that it was impossible to determine whether the original blow or a resulting secondary blow caused the victim's injuries, he stated there *223 was evidence that both were significant blows. However, Dr. Culicchia testified that it was his opinion that the initial blow to the face area caused unconsciousness which resulted in the victim falling in a way that he hit the ground with a lot of force without any reflex actions to protect himself.
After considering the conflicting testimony, the judge adjudicated the defendant delinquent for the commission of second degree battery.
In the present case, the trial judge was faced with conflicting testimony. On the one hand, some testimony indicated that the punch by the juvenile did not seem to be that hard and that it merely threw the victim off balance. When the victim slipped, he hit his head on the pavement and was rendered unconscious.
On the other hand, the state presented the testimony of Dr. Culicchia who testified that the victim had physical evidence on the back of his head to indicate that a blow to his head did occur.
The assessment of credibility of a witness is properly within the realm of the fact finder and an appellate court should not second guess a credibility finding beyond the sufficiency evaluation under the Jackson, supra standard of review. State v. Faulkner, 570 So.2d 516 (La.App. 5th Cir.1990).
The record reflects the trial judge was well aware the state needed to prove the defendant had the specific intent to inflict serious bodily injury. He evidently gave greater weight to the testimony of Dr. Culicchia who saw no signs of protective reflex actions and who was of the opinion the initial blow caused unconsciousness. His testimony was consistent with one of the eyewitnesses to the incident: Shelley Lawson.
In State v. Accardo, 466 So.2d 549 (La. App. 5th Cir.1985), writ denied, 468 So.2d 1204 (La.1985), the twenty-one year old male defendant struck the seventeen-year old female victim in the head with either his fist or a blackjack when she resisted sexual advances. Although the victim remained conscious, the blow caused a tremendous amount of swelling to her face. The court concluded that this evidence was sufficient to sustain defendant's conviction for second degree battery.
The denial of defendant's directed verdict was proper pursuant to the standard enunciated in State v. Hargrave, supra. Furthermore, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found defendant guilty of second degree battery beyond a reasonable doubt. Jackson, supra. The defendant hit the victim in an unprovoked fashion with such force as to render him unconscious.
Accordingly, for the reasons stated defendant's adjudication of delinquency based on violation of La.R.S. 14:34.1, second degree battery, and his disposition/commitment to the Department of Public Safety and Corrections/Louisiana Training Institute for three years, with credit for time served are affirmed.
AFFIRMED
NOTES
[1] La.R.S. 14:33 defines a battery as the intentional use of force or violence upon the person of another; or the intentional administration of a poison or other noxious liquid or substance to another.