hWICKER, Judge.
This is an appeal in a juvenile proceeding in which the juvenile was adjudicated delinquent for sexual battery. On appeal the juvenile asserts the evidence was insufficient. We affirm the adjudication.
On March 10, 1995, the State filed a petition in the Juvenile Court for the Parish of St. John the Baptist seeking to have R.W.L. adjudicated delinquent based on the allegation that he committed sexual battery, a violation of La.R.S. 14:43.1. On May 16, 1995, the juvenile entered a denial to the petition. The court conducted an adjudication hearing on July 18, 1995. After considering the evidence presented, the judge adjudicated R.W.L. delinquent as charged. On July 21, 1995, the judge committed the juvenile to the custody of the Department of Corrections until his eighteenth birthday. However, the judge thereafter suspended the sentence and placed R.W.L. on active probation, subject to various conditions. On July 26,1995, R.W.L. filed a motion for appeal.
FACTS
On May 24, 1994, the juvenile defendant, R.W.L., was a student at John L. Ory School with the victim, A.M. Several other juveniles witnessed the incident — specifically, M.B., A.H., G.H., C.B. and R.T.[1] All of these juveniles testified at the ^adjudication hearing; we shall discuss the inconsistencies in their testimony in Assignment of Error *11 Number One. For the initial factual scenario we set forth the victim’s version of events.
According to the victim, A.M., on" May 24, 1994, she was in the schoolyard for the noon recess. However, while the other students played, she stood in the shade by the door to the building because she was sunburned. At one point, G.H. and A.H. were with the victim, but they then went to play in the yard, leaving her by herself. As A.M. was standing there, she noticed the juvenile defendant, R.W.L., and R.T.,[2] walk up to the doors and try to open them. They were unsuccessful because the doors were locked. At that point, R.T. grabbed the victim’s hands and put them behind her back while R.W.L. touched her breast and vaginal areas. The victim told the boys to stop. They complied with her request and left the area as G.H. and A.H. were approaching. According to the victim, she was by herself when the incident occurred and did not notice anyone else around at the time. During A.M.’s testimony, she claimed that she did not report the incident because the two boys threatened to do something to her if she told.
ASSIGNMENT OF ERROR NUMBER ONE
Appellant asserts that the patently conflicting testimony of the State’s own witnesses at trial, contradicted by the defendant and his witness, was insufficient to support a conviction of R.W.L. of the crime of sexual battery.
In his sole assignment, the juvenile challenges the sufficiency of the evidence used to convict him. In order for the court to adjudicate a child delinquent, the State must prove beyond a reasonable doubt that the child committed a delinquent act alleged in the petition. La.Ch.C. art. 883. That burden of proof is no less strenuous than the proof standard required in a criminal proceeding against an adult. The due process standards enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), Uapply in evaluating the sufficiency of evidence to support an adjudication of delinquency in a juvenile matter. State in Interest of Tatom, 463 So.2d 35, 37 (La.App. 5th Cir.1985). Under Jackson, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found defendant guilty beyond a reasonable doubt. State v. B.E., 616 So.2d 211, 214 (La.App. 5th Cir.1993); State in Interest of B.J., 617 So.2d 238, 240 (La.App. 5th Cir. 1993).
In the present case, R.W.L. was adjudicated delinquent based on the commission of sexual battery. La.R.S. 14:43.1 defines that offense as follows:
A. Sexual battery is the intentional engaging in any of the following acts with another person, who is not the spouse of the offender, where the offender acts without the consent of the victim, or where the other person has not yet attained fifteen years of age and is at least three years younger than the offender:
(1) The touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender; or
(2) The touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim.
B. Lack of knowledge of the victim’s age shall not be a defense. However, where the victim is under seventeen, normal medical treatment or normal sanitary care of an infant shall not be construed as an offense under the provisions of this Section.
⅜ ⅜ ⅜ ‡ ⅜ ⅜
In the instant appeal, the juvenile does not specifically allege that the State failed to prove the elements of the offense, but rather he focuses on the credibility determinations by the trial judge. R.W.L. contends that based on the numerous contradictions in the testimony and upon the victim’s lack of credibility, reasonable doubt exists as to the truth of the events. Since R.W.L. focuses on ered- *12 ibility, we shall discuss the testimony of each witness, in the order in which they testified.
As stated previously, the victim testified she was standing alone in the shade when R.W.L. and R.T. approached and tried to open the doors, which turned out to be locked. |4 At that point, R.T. grabbed the victim’s hands behind her back while the juvenile defendant touched her breast and vaginal areas.
M.B. testified that on May 24, 1994, she was outside by the door of the building when she saw A.M., R.W.L., and R.T. standing together. Although she observed A.M. and R.W.L. talking, she could not hear what they were saying. She then saw R.W.L. feel A.M.’s legs around the knee area; however, she did not see R.T. touch or grab A.M. at anytime. After a few seconds, R.W.L. stopped what he was doing and the two boys left the area. During cross-examination, she testified that at this time the expressions on A.M.’s face did not look strange or afraid, but rather appeared normal. In contrast to the victim’s testimony, M.B. testified that prior to this incident, she saw the victim and defendant talking to each other in the school yard, that they were friendly, and that the victim told her that she liked R.W.L. and that he was going to be her boyfriend.
A.H. testified that on May 24, 1994, she was initially with G.H., A.M., and C.B. during the lunchtime recess; however, she and G.H. went to the side of the building to play wall-ball, leaving A.M. and C.B. by themselves. A short time later, C.B. ran to get A.H. and G.H., telling them something had happened to A.M. As the three girls ran towards A.M., they observed R.T. and R.W.L. leaving the area. When A.H. first saw A.M., she was in the comer shaking and crying. Although A.H. encouraged A.M. to report the incident, A.M. refused, saying they would do something worse to her. The girls then left the area and went to class. When A.H. got home, she reported the incident to her mother, who, in turn, called A.M.’s mother. A.H. further testified that she regularly plays with A.M., and has not seen A.M. play or “hang out” with R.W.L. or R.T.
G.H. also testified at the adjudication hearing. Her testimony mirrored that of A.H., except that G.H. testified that when she went to play wall-ball, she left the victim with C.B. and M.B.
C.B. testified that after G.H. and A.H. left to go play wall ball, R.T. and R.W.L. walked up to the area where she and A.M. were standing. According to C.B., R.T. Rpushed A.M. against the wall and R.W.L. touched A.M. in her breast and vaginal areas. According to C.B., they told the two boys to stop, but they refused. While the two boys were still holding and touching A.M., C.B. left the area to go get G.H. and A.H. As the three ran towards A.M., they saw R.T. and R.W.L. leaving the area and also observed that A.M. was crying. C.B. further testified that she never saw A.M. “hang out” with R.T. or R.W.L. before this incident.
The victim’s mother testified that on May 24, 1994, when she picked A.M. up from school, she could tell something was wrong because she was quiet and had tears in her eyes. Later that afternoon she received a phone call telling her that two boys had molested A.M. She then confronted her daughter, who told her that R.T. held her arms behind her back while R.W.L. played with her vaginal and breast areas. A.M. told her mother that she did not report what happened because R.W.L. threatened her.
After presenting the foregoing testimony, the State rested its ease. Defense counsel then called R.T., who testified that he and R.W.L. tried to open the double doors by the bathroom area, but found they were locked. He saw A.M. in the area and told her that R.W.L. liked her. According to R.T., A.M. was standing alone in the area and she pushed R.W.L., who then pushed her back. R.T. testified that at no time did he push A.M. against the wall, nor did he hear anyone threaten her.
At the adjudication hearing, the juvenile defendant testified in his own behalf. According to R.W.L., he remembered that he and R.T. tried to go to the bathroom but the doors were locked. However, R.W.L. denied that any incident happened between himself and A.M. He also denied seeing A.M. in the area and denied ever having any contact with A.M.
*13 Mrs. Keller, a substitute teacher at the school, testified that A.M.’s mother informed her that her daughter had been molested by two youngsters at the school. Mrs. Keller also testified about the victim’s truthfulness and testified as to one incident when A.M. did not tell the truth.
leMrs. Doris Jones, a teacher at the school, testified that she was on lunch duty at the school on May 24, 1994, and that no one reported any incident to her. The only thing she recalled from that day was that she saw two boys, R.T. and R.W.L., by the door. As she thought they were trying to sneak in to use the restroom, she called them away from the door. Pursuant to her request, they moved.
As can be seen by the foregoing summary of testimony, there were numerous inconsistencies in the witnesses’ versions of events, including contradictions about who was present at the time of the incident as well as what actually happened. It is not the function of the appellate court to evaluate the credibility of the witnesses, however, or to overturn the trial court on its factual determination of guilt. State v. Richardson, 425 So.2d 1228, 1232 (La.1983); State v. Lee, 526 So.2d 450, 451 (La.App. 5th Cir.1988). Such factual determinations are entitled to great weight and will not be disturbed unless clearly contrary to the evidence. State v. Lee, supra.
The trial judge’s credibility decision was not contrary to the evidence presented. Viewing the evidence, as set forth above, in the light most favorable to the prosecution, it can be said that the state proved beyond a reasonable doubt that R.W.L. committed sexual battery on A.M. Accordingly, we find no merit to the assignment of error.
ERROR PATENT DISCUSSION
An error patent review reveals that the juvenile was not given credit for time served in secure detention prior to the imposition of disposition. See La.Ch.C. art. 898(A). Although we note this omission, it is moot because the juvenile’s detention disposition was suspended and he was placed on active probation. Accordingly, the patent error is of no consequence.
DECREE
For the foregoing reasons, the adjudication of delinquency is affirmed.
AFFIRMED.

. To maintain the confidentiality of the proceedings required by La.Ch.C. arts. 407 and 412, we use initials for all the juveniles involved.

. R.T. also was charged with sexual battery as a result of this incident and was adjudicated delta-quent. Although the two boys were tried together, the appeal before us relates only to R.W.L.