IzGOTHARD, J.
A juvenile, R.W., appeals his adjudication as a delinquent for possession of stolen property, and the disposition imposed by the juvenile court subsequent to that adjudication. For reasons that follow, we affirm.
This matter began on January 13, 1997 when the district attorney for St. John the Baptist Parish filed a petition in juvenile court seeking adjudication of R.W. as a delinquent, based on the juvenile’s alleged theft of a bicycle valued at $140.00 in violation of LSA-R.S. 14:67. Shortly thereafter, the juvenile appeared with his mother and denied the allegations in the petition. On February 19,1997, immediately before the adjudication hearing, the district attorney amended the petition to charge R.W. with possession of a stolen bicycle in violation of LSA-R.S. 14:69. The juvenile denied the amended allegation. The court went forward with the adjudication hearing on that day, and held the matter open until March 18, 1997. After hearing all of the evidence, the judge took the matter under advisement. On March 26, 1997, the court rendered judgment finding R W. “guilty of violating LSA-R.S. 14:69.”
I sOn April 4, 1997, prior to disposition, R.W. filed a motion for appeal, which the court denied as premature. On April 22, 1997, the trial judge committed R.W. to the custody of the Department of Corrections for a period of six months. The sentence was suspended, and R.W. was placed on active probation for one year, and was ordered to *945 perform 25 hours of community service. Immediately following the court’s imposition of disposition, R.W. again filed a motion for appeal and a stay of execution of the disposition pending appeal. Both motions were granted.
The matter was lodged in this Court. However, because the appeal was taken and lodged before a written adjudication was handed down by the juvenile court, this Court dismissed the appeal and remanded the matter to the juvenile court.[1] On remand, the juvenile court judge signed the written judgment of disposition on March 4, 1998. The record shows that a premature petition for appeal was filed by the juvenile’s attorney, and was granted by the court on February 18, 1998. However, this appeal is properly before this Court because the signing of the final judgment cured the jurisdictional defect of prematurity. Overmier v. Traylor, 475 So.2d 1094 (La.1985); Barillas v. Carrion, 96-746 (La.App. 5 Cir. 3/25/97), 692 So.2d 1217, 1218. On March 10, 1998, the court granted the juvenile’s request for a stay of the execution of the disposition pending the outcome of the appeal.
At the adjudication hearing, the state presented the testimony of Ben and Dorrel Triche to establish its case. Eleven-year-old Ben Triche testified that on Saturday, September 21, 1996, while he was at a nearby friend’s house, his bicycle was stolen from the front yard. He stated that when he arrived home, he | .[did not tell his parents that his bike was taken. At approximately 1:00 or 2:00 p.m. on the next day, while he and his father were returning home from a fishing trip, Ben saw two boys riding bicycles. One of the boys was riding the bicycle taken the previous day. Ben told his father that his bicycle had been stolen and that he thought he had just seen somebody riding it. He testified that he did not recognize the person on the bike at that time, and that he could not identify R.W. as the person who was riding the bike.
Dorrel Triche, Ben’s father, drove into the Cambridge Subdivision, the direction in which the boys were riding. A short while later, Mr. Triche and Ben found the boys, and Mr. Triche stopped the boy who was on Ben’s bicycle. When Mr. Triche asked the boy what he was doing with his Ben’s bike, the juvenile replied that the bike belonged to his cousin. Mr. Triche testified that he told the boy to “wait there”, and called the police from his cellular phone. However, the boy rode away on the bicycle to a nearby house and threw the bike over the fence. He fled, but was apprehended by the police nearby.
Mr. Triche testified that he found the bicycle behind a shed in the back of the house. Both Ben and Mr. Triche identified the bike as the one that belonged to Ben. Additionally, Mr. Triche positively identified R.W. as the person he had seen riding his son’s bicycle on September 22,1996. Finally, he testified that he purchased the bike for $150.00 as a gift for Ben in May of 1996.
Corporal Melissa Springer testified that she was dispatched to the corner of Plymouth and Cambridge Drives at approximately 3:52 p.m. on September 22,1996. She stated that Mr. Triche told her that he had seen a juvenile riding his son’s stolen bicycle. He told her that there were two black male juveniles, each riding a bicycle and that he thought that he had cornered them in a nearby yard. RShe checked the yards and did not find the juvenile, but did locate the bicycle. Corporal Springer testified that Mr. Triche described one of the juveniles as wearing a black shirt. At approximately 4:00 p.m ., she saw a black male juvenile in dark clothes walking down the street. The officer testified that Mr. Triche identified the juvenile as the individual he had seen riding his son’s bicycle. She placed the juvenile in custody, and went to his home to inform his mother.
The juvenile, his mother, and two other witnesses testified on his behalf. R.W. testified that on September 22, 1996, at approximately 3:30 p.m., he went to play basketball with a friend. He stated that he encountered one of his friends and stopped to talk for a short while. Then he walked around the corner where he saw Mr. Triche and the police. R.W. stated that he was arrested after Mr. Triche said that he “was one of the *946 people that had stole his son’s bike ... R.W. denied stealing the bike or riding a bike that day.
The juvenile’s mother testified that R.W. was home all day. She allowed him to go to a friend’s house to play basketball at approximately 3:30 p.m. She said that at around 4:00 p.m., the police came to her home to tell her that R.W. had been arrested.
Denise Watkins, a neighbor of R.W., testified that on September 22, 1996, she left her house at approximately 3:00 p.m. to visit one of her friends. She stated that while on her way there, she saw R.W. leaving his house and that she spoke to him for a short time. Denise Watkins learned later that afternoon that R.W. was accused of stealing a bicycle.
Patricia Watkins, who lived in the same household as Denise Watkins, testified that on the afternoon of this incident, her grandson came to tell her that]¿the police were in the neighborhood. She stated that she observed the police officer and Mr. Triehe outside. However, Ms. Watkins testified that she did not see anyone on a bicycle.
In brief to this Court, R.W. assigns five errors. In the first, he alleges that it was error for the trial court to allow the state to amend its charge against the defendant on the date of the adjudication hearing without prior notice. Counsel objected to the motion to amend the charge, arguing that he was prepared to defend against the original charge of theft, not the amended charge of possession of stolen things. The state responds that the judge properly allowed the amendment of the petition because the amendment occurred prior to the commencement of the adjudication hearing, as authorized by LSA-Ch.C. art. 846. The state further responds that the juvenile was not prejudiced by the amendment of the petition because the hearing was held open for a month, allowing the defense time to present new evidence in response to the amended charge.
The record reflects that the original petition alleged that the juvenile committed theft of a bicycle owned by Dorrel Triehe valued at $140.00 in violation of LSA-R.S. 14:67. At the commencement of the adjudication hearing, the district attorney moved to amend the petition to charge R.W. with possession of a stolen bicycle in violation of LSA-R.S. 14:69. The juvenile’s attorney objected on the ground that he had prepared his defense based on the information alleged in the original petition. The court overruled the objection and arraigned the juvenile on the amended allegation. Later that day, after the testimony of the state’s witnesses and the testimony of the juvenile’s mother, the hearing was held open to provide the defense with the opportunity to secure additional witnesses. |7The matter was re-opened one month later on March 18, 1997, and concluded on that day.
LSA-Ch.C. art. 846 provides in pertinent part as follows:
B. With leave of court, prior to the adjudication hearing, the petitioner may amend the petition to include new allegations of fact or requests for adjudication. However, if such leave is granted, the child may request a continuance of the adjudication hearing. A continuance may be granted for such period as is required in the interest of justice.
C.' After jeopardy begins pursuant to Article 811, a petition shall not be amended to include new allegations of fact or requests for adjudication.
LSA-Ch.C. art. 811 provides that “when the child enters a denial to the petition, jeopardy begins when the first witness is sworn at the adjudication hearing.”
In the present matter, R.W. cites State v. Johnson, 93-0394 (La.6/3/94), 637 So.2d 1033, in support of his argument. In that case, the Louisiana Supreme Court reversed the defendant’s conviction and held that the amendment to the bill of information after the close of the case prejudiced the defendant because he was not afforded adequate notice of the new charge. Id., at 1035. While the state did not formally amend the bill of information in Johnson, the Louisiana Supreme Court concluded that the trial court’s charge to the jury “broadened the possible basis of conviction beyond that originally charged by adding a new and separate crime for the jury to consider without adequate notice to the defense and over its objection.” Id.
*947 We do not find Johnson controlling in the instant case. Johnson is distinguishable in that the “amendment” occurred after the parties had rested, unlike the present case, where the petition was amended before the adjudication hearing commenced.
18In this case, the child entered a denial to the original allegation in the petition. Because the petition was amended before the first witness was sworn, jeopardy had not attached. Thus, paragraph B of Article 846 is controlling. Here, the adjudication hearing had not yet begun when the court granted leave to amend, and the defense request to hold the matter open was granted thereby affording the juvenile the opportunity to fully prepare and present a defense to the amended charge. There has been no showing of prejudice which would give merit to the juvenile’s assignment of error. Under these circumstances, we find no error in the decision of the juvenile court to allow the state to amend the petition at the adjudication hearing. See; State in Interest of Lewis, 386 So.2d 1079 (La.App. 8 Cir.1980).
In his second and third assignments of error, the juvenile argues that the trial court erred in allowing a witness to remain in the courtroom in violation of the sequestration order, and in denying the motion for mistrial as a result of the violation of the sequestration order. By these assignments, the juvenile contends that the juvenile court judge improperly denied his motion for a mistrial made on the ground that the state’s witness, Ben Triche, had violated the sequestration order. The state responds that the juvenile was not prejudiced by the judge’s ruling because Ben had given his testimony previously and was not recalled by either party.
The record reflects that the juvenile’s attorney moved for sequestration of witnesses immediately prior to the adjudication hearing. The court granted the motion. However, the record does not reflect that the court specifically instructed the witnesses to refrain from discussing the ease among themselves or to remain out of the courtroom before and after their testimony. Eleven-year-oldJ^Ben Triche was the first witness to testify on behalf of the state. The next witness who testified was his father, Dorrel Triche, During Mr. Triche’s testimony, the juvenile’s attorney noted that Ben remained in the courtroom and objected to his violation of the sequestration order. The court noted the objection and denied the mistrial. The court instructed the witness to go out into the hall and remain there until called. However, neither party re-called Ben to testify at any time throughout the remainder of the adjudication hearing.
Article 879 of the Children’s Code provides for the sequestration of witnesses. Section C of that article provides as follows:[2]
C. On its own motion the court may, and on the request of a party the court shall, order that the witnesses, other than parties, be excluded from the courtroom or from a place where they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the ease. In the interest of justice, the court may exempt any witness from its order.
In the present case, the juvenile moved for a mistrial at the adjudication hearing and assigns as error on appeal the trial court’s failure to grant that motion. The Louisiana Children’s Code does not specifically provide for the remedy of a mistrial.[3] However, LSA-Ch.C. art. 104 provides that if the Children’s Code is silent, then in a delinquency proceeding, a court should follow the Code of Criminal Procedure. State in Interest of D.S., 95-1019 (La.App. 5 Cir. 4/16/96), 673 So.2d 1123, 1127, writ denied, 96-1237 (La.6/21/96), 675 So.2d 1086. A mistrial in a criminal proceeding is a drastic remedy and is within the discretion of the trial court, unless mandatory under LSA- *948 C.Cr.P. art. 770. in State v. Winfrey, 97-427 (La.App. 5 Cir. 10/28/97), 703 So.2d 63, 71. It is only warranted if substantial prejudice results which would deprive the defendant of a fair trial. State v. Narcisse, supra, at 133; State v. Winfrey, supra. Whether a mistrial should be granted is within the sound discretion of the trial court, and the denial of a motion for mistrial will not be disturbed on appeal absent an abuse of that discretion. State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 929; State v. Brown, 96-1002 (La.App. 5 Cir. 4/9/97), 694 So.2d 435, 439 writ denied, 97-1310 (La.10/31/97), 703 So.2d 19.
There is little jurisprudence on sequestration of witnesses in delinquency adjudications. In State in Interest of Giangrosso, 395 So.2d 709, 712 (1981),[4] the Louisiana Supreme Court found that the court improperly exempted the investigating officers from a sequestration order, but found that the error was harmless. There is, however, substantial criminal jurisprudence on the issue of violations of sequestration orders which we find useful in the analysis of this assignment of error.
The law regarding sequestration of witnesses as provided for by the Criminal Code is substantially the same as the Children’s Code. See: LSA-C.Cr.P. art. 764 and LSA-C.E. art. 615A. The purpose of an order of sequestration is to prevent witnesses from being influenced by the testimony of witnesses who have already testified, and to strengthen the role of cross-examination in developing the facts. State v. Narcisse, 426 So.2d 118, 132 (La.1983), cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983); State v. Sterling, 95-673 (La.App. 5 Cir. 2/27/96), 670 So.2d 1316, 1320. A | nviolation of a sequestration order does not warrant a mistrial absent an indication that the violation materially prejudiced the defendant. State v. Gabriel, 542 So.2d 528, 543 (La.App. 5 Cir.1989), writ denied, 558 So.2d 566 (La.1990).
In the present case, the juvenile alleges that the sequestration order was violated because Ben Triche remained in the courtroom after he testified and was present during the testimony of his father. In a similar case, the First Circuit found that the trial court properly denied defendant’s motion for a mistrial made on the ground that the sequestration order was violated by a witness who remained in the courtroom after giving testimony. State v. Kimble, 546 So.2d 834 (La.App. 1 Cir.1989). The First Circuit found that the defendant failed to show how he was prejudiced because the state witness who allegedly was in the courtroom during the testimony of the defense witness did not testify again and thus, his testimony was neither influenced by, nor corrupted-by, the alleged violation of the sequestration order. State v. Kimble, at 842.
In the present case, we find that the juvenile has failed to established that he was prejudiced by the judge’s ruling. Like the witness in Kimble, Ben did not testify again, and thus, his testimony could not have been corrupted. The juvenile court judge is accorded considerable discretion in determining the manner in which a hearing is to be conducted, and only when there is a showing that the judge has abused this discretion will an appellate court intervene. State in Interest of Brecheen, 264 So.2d 779, 782 (La.App. 1 Cir.1972), writ refused, 262 La. 1175, 266 So.2d 450 (La.1972). Because we find no abuse of discretion in the denial of the motion for mistrial, we will not intervene.
In his next assignment, the juvenile raises issues of credibility of one of the state’s witnesses. The juvenile complains that Dorrel Triche’s testimony so | ^conflicts with his prior statements that his testimony is not believable. On direct examination, Mr. Triche testified that the bicycle was stolen on September 21, 1996, the day before the incident. On cross-examination, the juvenile’s attorney questioned Mr. Triche about statements he had made to the investigating officer and to the Justice of the Peace at the time of the arrest. Mr. Triche read the statement and verified that it was the statement he had given. The defense attorney *949 then pointed out some inconsistencies between the statement and the witnesses’ current testimony, in an attempt to impeach the witness.
The assessment of credibility of a witness is properly within the realm of the fact finder. State in Interest of G.M., 617 So.2d 219, 223 (La.App. 5 Cir.1993). Reasonable evaluation of credibility and reasonable inferences of fact should not be disturbed on appellate review. State in Interest of J.L., Jr., 592 So.2d 435, 438 (La.App. 5 Cir.1991), writ denied, 597 So.2d 1031 (La.1992). Such factual determinations are entitled to great weight and will not be disturbed unless clearly contrary to the evidence. State in Interest of R.W.L., 95-892 (La.App. 5 Cir. 2/14/96), 671 So.2d 10, 13. In the instant case, the judge heard Mr. Triche’s explanation of the differences between his prior statements and his trial testimony. Given the testimony presented in this case, we do not find that the judge’s findings are contrary to the evidence. Accordingly, the findings will not be disturbed on appeal.
By his final assignment, the juvenile asserts that the state failed to prove the elements of the offense by a preponderance of the evidence. Specifically, the juvenile contends that he was not identified as the person who took the bicycle and that his mother’s testimony conflicted with the testimony of the state’s witnesses. Finally, the juvenile argues that the state failed to prove that the hajuvenile knew or should have known that the bicycle was stolen. The state responds that it established all of the elements of the offense of possession of stolen things beyond a reasonable doubt.
In order for a child to be adjudicated a delinquent, the state must prove beyond a reasonable doubt that the juvenile committed a delinquent act. LSA-Ch.C. art. 883. That burden of proof is no less strenuous than the standard of proof required in an adult criminal proceeding. State in Interest of R.W.L., supra, 671 So.2d at 11. In reviewing the sufficiency of the evidence in a juvenile proceeding, reviewing courts apply the due process standards of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). State in Interest of Batiste, 367 So.2d 784, 789 (La.1979); State in Interest of C.D., 95-160 (La.App. 5 Cir. 6/28/95), 658 So.2d 39, 40. Under the Jackson standard, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt.
When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 provides that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” This is not a separate test from the Jackson standard. State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132, 1134; State in Interest of B.J., 617 So.2d 238, 241 (La.App. 5 Cir.1993). In circumstantial evidence cases, when the factfinder reasonably rejects the hypothesis of innocence offered by the defendant in his own testimony, “that hypothesis fails, and the defendant is guilty, unless there is another hypothesis which raises a [^reasonable doubt.” State v. Hawkins, 96-0766 (La.1/14/97), 688 So.2d 473, 479; State v. Captville, 448 So.2d 676, 680 (La.1984).
Illegal possession of stolen things is defined in LSA-R.S. 14:69(A) as follows:
A. Illegal possession of stolen things is the intentional possessing, procuring, receiving, or concealing of anything of value which has been the subject of any robbery or theft, under circumstances which indicate that the offender knew or had good reason to believe that the thing was the subject of one of these offenses.
Thus, in order to convict a juvenile of possession of stolen property, the state must prove, beyond a reasonable doubt, that 1) the property was stolen, and 2) the property was of value, and 3) that the defendant knew or should have known that the property was stolen, and 4) that the defendant intentionally possessed, procured, received or concéaled the property. State in Interest of B.J., supra, at 617 So.2d 241.
To prove the property was stolen, the state presented testimony from Ben and Dorrel *950 Triche. Ben testified that he was at a friend’s house on Saturday, September 21, 1996, when his bicycle was stolen from the front yard. He testified that he did not tell his parents that his bicycle was stolen on that day. The next day, he told his father that his bicycle had been stolen after he saw a boy riding the bicycle. Both Ben and Mr. Triche testified that they could identify the bicycle. Specifically, Ben stated that he had “no doubt” that the recovered bicycle was his because of identifying marks made by his dog on the bicycle’s gear case. Additionally, Mr. Triche testified that the bicycle was new when he bought it in May of 1996 for his son’s birthday. He stated that he had paid $150.00 for the bicycle and that the bicycle was only three or four months old when it was stolen, thereby proving that the bicycle had value.
|15The third element of the crime is that the juvenile knew or should have known that the property was stolen. As pointed out by the juvenile, mere possession of a stolen thing does not rise to a presumption that the possessor knew it was stolen. State v. Daniel, 536 So.2d 796, 798 (La.App. 5 Cir.1988), writ denied 541 So.2d 892 (La.1989). Mr. Triche testified that when he confronted R.W., the juvenile stated that the bicycle belonged to his cousin. Mr. Triche further testified that he told R.W. that the bike belonged to his son, and told R.W. to “wait there”.
Instead of waiting while Mr. Triche called the police, R.W. fled and hid the bicycle behind a shed in the back yard of a nearby house. Additionally, it is noted that R.W.’s statement that the bicycle belonged to his cousin was uncorroborated. In light of this evidence, we find the state proved that R.W. knew or should have known that the bicycle was stolen.
The last element that the state had to prove was that the juvenile intentionally possessed, procured, received or concealed the property. Both Ben and his father testified that they saw someone riding Ben’s bicycle on Sunday, September 22, 1996 at approximately 1:00 or 2:00 p.m. Although Ben could not identify R.W. as the person he saw riding the bicycle, Dorrel Triche did identify the juvenile. Mr. Triche further testified that he stopped R.W. while he was riding the bicycle and had a short conversation with him.
The defense sought to establish an alibi defense through the testimony of its witnesses. The juvenile denied stealing the bicycle and denied riding a bicycle on the day of the incident. He testified that he was home until 3:30 p.m., when he left to go to a friend’s house. R.W.’s mother testified that he was at home until 3:30 p.m. on the day of the incident. She stated that the police came to her housejigat approximately 4:00 p.m. to tell her that her son had been arrested. Another defense witness, Denise Watkins, testified that she left her house at 3:00 p.m. on September 22, 1996. She stated that she saw R.W. shortly thereafter and stopped to talk to him for a while. She stated that when she saw R.W., he was walking, not riding a bicycle. Miss Watkins testified that she was on her way to a friend’s house, but that when she arrived, the friend was not there. On her way home, she stated that she saw a police officer at the corner talking to a man in a red truck. Miss Watkins further testified that R.W.’s mother told her later that day that R.W. had been accused of stealing a bicycle and that she told R.W’s mother that R.W. could not have done it because she had just passed him a little while before she saw the police officer and the man in the truck.
As indicated by the foregoing, the juvenile judge was presented with conflicting testimony. The assessment of credibility of a witness is properly within the realm of the factfinder and an appellate court should not second-guess a credibility finding beyond the Jackson, supra, sufficiency evaluation. State in Interest of G.M., 617 So.2d 219, 223 (La.App. 5 Cir.1993). Here, the judge apparently gave more weight to the testimony of the state’s witnesses than to the defense’s version of the events. Considering all of the above, we find that, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the juvenile guilty of possession of a stolen bicycle beyond a reasonable doubt. Accordingly, we find no merit in this assignment of error.
*951 In State in Interest of C.D., 95-160 (La.App. 5 Cir. 6/28/95), 658 So.2d 89, 41, this Court noted that the Louisiana Children’s Code is silent as to whether a juvenile criminal proceeding is entitled to an error patent review on appeal. | ]7This Court further noted that according to LSA-Ch.C. art. 104, the Louisiana Code of Criminal Procedure governs in matters not provided for in the Children’s Code. Thus, the Court concluded that “we are mandated by La.C.Cr.P. art 920 to conduct an error patent review despite the fact that defense counsel did not request it.” Id. We have conducted such a review and find no errors patent.
For reasons expressed above, we affirm the adjudication and disposition in this matter.
AFFIRMED.

. State v. R.W. 97-669 (La.App. 5 Cir 12/30/97), 704 So.2d 995, unpublished.

. It is noted that paragraphs C and D of this article are identical. According to this article’s Historical and Statutory Notes, "[t]he 1995 amendment deleted par. B, redesignated former par. C as par. B and rewrote that paragraph, and redesignated former par. D as par. C.” During these revisions, paragraphs C and D became duplicates of each other.

. Article 887 of the Children's Code provides for vacating an adjudication of delinquency, but it covers only post-adjudication remedies.

. It should be noted that this case was decided under this article's predecessor, Code of Juvenile Procedure article 69, which provided that Article 615 of the Louisiana Code of Evidence governed the exclusion of witnesses in adjudication hearings.