686 So.2d 994 (1996)
STATE of Louisiana
v.
Lucius W. PERRON.
No. 94-KA-0761.
Court of Appeal of Louisiana, Fourth Circuit.
December 27, 1996.
Writ Denied January 24, 1997.
Harry F. Connick, District Attorney of Orleans Parish, Richard R. Pickens, II, Assistant District Attorney of Orleans Parish, New Orleans, for the State of Louisiana.
Edward Newman, Orleans Indigent Defender Program, New Orleans, for Defendant.
Before BYRNES, ARMSTRONG and PLOTKIN, JJ.
*995 PLOTKIN, Judge.
In this appeal, we consider whether a new trial should have been granted under Code of Criminal Procedure article 851(3) when, after the defendant's conviction, evidence was discovered which significantly impaired the credibility of the sole witness at trial to identify the defendant as the shooter. We also consider whether the evidence presented at trial was sufficient to support the conviction. Finding under the circumstances of this case that a new trial is not required by Article 851(3), but that the evidence is insufficient to establish the defendant's identity as the shooter beyond a reasonable doubt, we reverse the conviction.
On March 10, 1993, defendant Lucius Perron and codefendant Demetrius Williby were charged by bill of information with illegally discharging a firearm in violation of La.R.S. 14:94. A mistrial was granted as to Williby when the jury was unable to reach a verdict. On January 27, 1994, defendant Perron was found guilty as charged and, on April 12, 1994, he was sentenced as a multiple offender to four years at hard labor. On November 2, 1994, Perron appealed his conviction and sentence. On January 10, 1995, he contended pro se in a supplemental brief that he had discovered new evidence that discredited the State's primary witness, Officer Len Davis. On August 23, 1995, this Court determined that, in the interests of justice, the defendant's allegations regarding newly discovered evidence should be considered as a motion for new trial. Therefore, this Court pretermitted consideration of Perron's appeal. On remand, the trial court denied the motion for new trial. Perron now seeks review of the denial of his motion for new trial and consideration of the assignments of error raised in his original appeal.
At trial, Sergeant Lee Cole of the New Orleans Police Department testified that he was directed by the police dispatcher to investigate a disturbance at 4630 Downman Road on January 10, 1993, at approximately 3 a.m. He did not hear a call by an officer requesting back up. At the scene, he interviewed witnesses and saw approximately forty spent casings on the ground, most of which were on the same side of the street as the lounge. He searched the crime scene for damage but could find nothing that was hit. Sergeant Cole identified photographs of the crime scene.
Officer Len Davis of the New Orleans Police Department testified that in the early morning of January 10, 1993, he was off duty but in uniform when Donald Williams called to ask for a ride home from Flynn's Den at 4630 Downman Road. Prior to Williams's call, Officer Davis drank a daiquiri with a friend. When he arrived at the front of the lounge, he had a discussion with a female friend and then saw Perron and Addison, who were also standing outside the lounge, arguing because Addison had stepped on Perron's foot inside the club. Officer Davis and Johnny Evans, a co-owner of Flynn's, intervened and Perron left (with someone who was not Williby) after saying that he would come back and "spray this whole fucking club." There were approximately fifty or sixty people inside the lounge. Then Officer Davis entered the lounge to find Mr. Williams. While inside, he saw people, who were screaming about a gun, run inside. Officer Davis exited the lounge and saw Perron, who was armed with a rifle, standing fifteen or twenty feet away in the neutral ground behind a gray or tan Thunderbird. Perron pointed the rifle at the crowd of ten or twenty people. Officer Davis returned to his vehicle to retrieve two .357s and then ordered Perron to drop the rifle. Perron fired toward the crowd and Officer Davis returned fire from approximately twenty feet away. The Thunderbird began driving down the street and Perron ran behind it still firing the rifle toward Officer Davis and the crowd. Officer Davis and Perron continued to exchange fire, and others in the crowd fired as well, until Perron entered the Thunderbird, which then drove away down Downman toward Morrison. He denied emptying any casings onto the street. Officer Davis then called in a description of the vehicle and drove in the direction he had last seen it travelling. When he heard that the vehicle was found ten or fifteen minutes later, Officer Davis relocated to the scene and identified Perron. He testified that he could not *996 identify the driver. Officer Davis identified Perron in court as the shooter.
Officer Davis also testified when he was in court for a motion hearing in this case, he was approached by Perron who apologized, explained that he was been drinking that night, and asked that Davis drop the charges against him. Officer Davis saw Perron at Flynn's subsequently, and Perron again apologized and asked him not to come to court to testify.
Mr. Donald Williams, a friend of Officer Davis, testified that on January 10, 1993, he was employed at Flynn's Den. In the early morning of January 10, 1993, he called Officer Davis to get a ride home from Flynn's Den. The defendant, whom he identified in court, had argued earlier in the lounge with Michael Addison who then apologized to the defendant. Approximately ten or fifteen minutes later, he saw Officer Davis arrive but then exit the bar. Mr. Williams followed Officer Davis outside where he heard shots and took cover. There were between thirty and forty people outside the bar. After the shooting was over, he saw several spent casings scattered on the ground. He did not see Perron after the argument with Addison and did not see who was shooting.
It was stipulated that Officer Kenneth Leary, a firearms examiner for the New Orleans Police Department's Crime Laboratory, was an expert in firearms identification. He examined bullets and casings recovered from outside Flynn's Den. He identified three calibers recovered from the scene: nineteen 9 mm cartridge cases, twelve .38 caliber cartridge cases, and two 30/30 Winchester cartridge cases. He was unable to match any of the cartridge cases to the two weapons that were submitted to him for testing. He concluded that the cartridge cases he examined resulted from the firing of at least six different weapons. Officer Leary identified his ballistic report.
Sergeant Lawrence Weathersby of the New Orleans Police Department testified that on January 10, 1993, he responded to a call of an officer who needed assistance in the 4700 block of Downman Road. The description of a gray Thunderbird driven by two black males, one of whom was firing a high power rifle, was broadcast. The license plate number was not known. A car matching the description was found approximately one mile away near Chef and Meredith Street. This car was followed and ultimately stopped by approximately 70 police vehicles. Officer Davis identified both occupants in the car that was stopped. Despite the number of shots fired, the car was undamaged. Sergeant Lawrence returned to Flynn's Den and found the 30/30 casings at the location where the car was reported to have left the scene. He searched along the path taken by the Thunderbird but did not find any weapon discarded. Sergeant Lawrence identified Williby and Perron in court as the driver and passenger of the Thunderbird and identified the 30/30 cartridges he found in the 4700 block of Downman Road.
At the hearing on the motion for new trial, the State conceded that the case against Perron is not viable without the testimony of Officer Davis.
Appellant contended he is entitled to a new trial because of newly discovered evidence including Officer Davis's arrest for murder, the extensive internal affairs investigation of Davis, and Davis's reputation for brutality. Following remand for hearing on this motion, the trial court declined to grant Perron a new trial. The trial judge found that Davis's credibility could have been challenged at the time of trial and that it was unnecessary in this case to grant a new trial because of Davis's involvement. The denial of a motion for new trial can be reversed only if it is found to be an arbitrary and palpable abuse of the trial court's discretion. State v. Tyler, 342 So.2d 574, 588(La.), cert. denied, 431 U.S. 917, 97 S.Ct. 2180, 53 L.Ed.2d 227 (1977). A trial court assessing the legal merits of a motion for new trial is given considerable latitude in evaluating the reliability of the evidence and its impact on the verdict. State v. Humphrey, 445 So.2d 1155, 1159-60 (La.1984).
The trial judge did not abuse his discretion in denying the motion for a new trial under La.C.Cr.P. art. 851(3). Davis's involvement in a later murder is not newly discovered evidence as contemplated by Code *997 of Criminal Procedure article 851(3) but rather is evidence which did not yet exist because Davis had not yet committed the crime. The subsequent newspaper coverage of the investigation of Officer Davis does not establish that the State possessed information that would have impeached his credibility at the time of Perron's trial. Cf. State v. Bobb, 573 So.2d 570, 575-76 (La.App. 4th Cir.1991), writ denied, 577 So.2d 48 (La.1991), 578 So.2d 930 (La.1991), 600 So.2d 657 (La.1992).
Generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility. La.C.E. art. 609.1(B). At the time of trial, Davis had not been convicted. The credibility of a witness may be attacked or supported by evidence in the form of general reputation only, but the evidence may refer only to character for truthfulness or untruthfulness. La.C.E. art. 608. Davis's reputation for brutality, as reflected in subsequent newspaper articles, and his extensive internal affairs file, although newly discovered, has not been shown to relate to his character for truthfulness or untruthfulness. Under the circumstances, the denial of the motion for a new trial has not been shown to be an arbitrary and palpable abuse of the trial court's discretion.
Previously on appeal, Perron assigned several errors relating to the sufficiency of the evidence, ineffective assistance of counsel, the admission of hearsay, and others, which were all pretermitted when the case was remanded for hearing on the motion for a new trial. Perron in his motion for new trial pro se again challenged the sufficiency of the evidence. Finding the testimony at trial so riddled with numerous eccentricities, unusual coincidences, and lack of corroboration that the evidence is insufficient to establish Perron's identity as the shooter beyond a reasonable doubt, we reverse his conviction and do not reach the remaining assignments of error.
In evaluating the sufficiency of the evidence to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La. App. 4th Cir.1991). Nevertheless, the reviewing court may not disregard its duty to consider whether the evidence is constitutionally sufficient simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court is not permitted to consider just the evidence most favorable to the prosecution but must consider the record as a whole as a rational trier of fact would. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green.
Applying these precepts to the present case, we conclude that any rational trier of fact, after viewing all the evidence as favorably to the prosecution as a rational fact finder can, necessarily must have a reasonable doubt as to Perron's guilt. Officer Davis testified that Perron, while illuminated by streetlights, fired a rifle once into a crowd of at least ten persons from approximately fifteen to twenty feet away. Donald Williams estimated that the size of this crowd was between thirty and forty persons. However, no one was injured and no one testified to corroborate Officer Davis's identification of the shooter. Officer Davis testified that, after retrieving his weapons from his own vehicle, he and others exchanged fire with Perron as Perron ran behind the Thunderbird. However, again no one was injured and no one testified to corroborate Officer Davis's identification of the shooter. Although approximately forty spent casings were recovered from the scene, which were fired from at least six weapons, Perron, the driver, and the crowd were uninjured, and there was no damage to the Thunderbird. Officer Davis failed to obtain the license plate number of the vehicle. Despite the presence of several witnesses and participants in the shooting, no one testified in court to corroborate Officer *998 Davis's version of the events and the physical evidence contradicts his incredible testimony.
In addition to these inconsistencies and eccentricities, the testimony contains other troubling elements as well. Although Officer Davis testified that he and Johnny Evans heard Perron make his threat, Evans did not testify. Officer Davis was also the only witness to testify about the content of two subsequent conversations with Perron in which he admitted his guilt. Although Perron was supposed to have gotten a ride from the lounge with one man (who, according to all witnesses, was not Williby), he was arrested a short time after with Williby. Officer Davis denied that he identified Williby as the driver at the time of the shooting although Sergeant Weathersby testified that Davis identified both Perron and Williby at the time of their arrest. Although Perron was supposed to have fired a rifle, the rifle was not found. Despite the extensive gunplay, only Perron and Williby were arrested.
In summary, we conclude that, after viewing this evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Accordingly, we reverse Perron's conviction and order his release from custody.
REVERSED.