hKLEES, Chief Judge.
On July 18, 1996, the State filed a bill of information charging the defendant-appellant Willie Gipson with one count of second degree murder, a violation of La. R.S. 14:30.1. The defendant was arraigned and entered a not guilty plea on July 22, 1996. A motion hearing was held on November 8, 1996, at which time the trial court denied the motions to suppress the identification and evidence. Following a trial on May 1,1997, a twelve-person jury returned a verdict of guilty as charged. The defendant’s post-verdict motions were denied on September 4, 1997. On October 31, 1997, the trial court sentenced the defendant to *189 life imprisonment without the benefit of probation, parole, or suspension of sentence. Defendant appeals this sentence. FACTS
On March 28, 1996, Officer Wellington Beaulieu was assigned to community policing and was working on foot patrol in the Florida housing project. While in the 2600 block of Alvar, he and his partner heard several shots of gunfire in the area of the 2600 block of Bartholomew. After calling dispatch, the officer | ¡¡.proceeded the one-half block to Bartholomew, where he observed a black male lying face down in the driveway. The victim, Roy Simon, had sustained several gunshot wounds. After calling for an emergency unit, the officer interviewed Sabrina Simon, the victim’s wife. The officer obtained information that a black male, wearing a green shirt, fled on a bicycle. Later, while filling out the pertinent reports, Officer Beaulieu received information by phone as a result of which he went to 2538 Mazant Street to look for a bike and a subject armed with a handgun. When no one responded at 2538 Mazant, Officer Beaulieu’s partner left to secure a search warrant. At that point, the resident of the apartment returned home and gave the police consent to search. Inside the kitchen, Officer Beau-lieu observed a bicycle; the apartment resident stated she knew nothing about the bike or to whom it belonged. The bicycle was seized as evidence. At trial, the bicycle was identified by Officer Beaulieu by the tag and because of its muddy condition. The officer testified that the courtyard was wet and muddy on the night of the incident. However, on cross-examination, he admitted that he observed no bike tracks in the area where the victim was shot. He also testified that the defendant did not live at the Mazant Street apartment.
According to the trial testimony of Dr. Paul McGary, an expert in forensic pathology, the victim Roy Simon had sustained three gunshot wounds. Three bullets, nine millimeters in diameter, were recovered from the victim’s body during the autopsy. The fatal wound had entered the victim’s abdomen and collapsed his right lung. Tests on the victim’s bodily fluids were negative for alcohol and drugs.
Marion Mosley lived next door to the victim and his wife. On the evening of the murder, Ms. Mosley was coming down the steps with the victim. The victim walked toward his car while Ms. Mosley proceeded down the driveway to her 13sister-in-law’s apartment down the block. As Ms. Mosley was talking to neighbors outside of her sister-in-law’s apartment, she heard shooting and dived into the hallway. Although she was not sure at trial, Ms. Mosley believed she saw “a bike going through the gap.” It was too dark to determine if a man or a woman was on the bicycle. She heard the victim calling, “Brenda, Brenda, Brenda, I’m shot” and ran over to him; Ms. Mosley stayed with the victim and called out for his wife, but the victim’s wife never came. Ms. Mosley testified at trial that she did not see the defendant that night.
Detective Fred Austin was the lead homicide investigator assigned to the murder of Roy Simon. After some investigation, the defendant’s name was developed as a subject. Detective Austin compiled a photographic line-up which he showed to Sabrina Simon. Mrs. Simon selected the defendant’s photograph as that of the person who shot her husband Roy. The photo line-up was conducted on May 9, 1996.
Detective Austin testified at trial that, on the night of the murder, Sabrina Simon provided a description of the shooter as approximately five feet eight inches to six feet tall. Ms. Mosley could not provide any physical description except that of a black male wearing a green shirt and riding a bike. Detective Austin further testified that the bicycle seized from the Ma-zant Street apartment was examined for fingerprints; the examination was negative for latent fingerprints. The defendant did not live at the apartment.
*190 Sabrina Simon testified that she had been married to the victim Roy Simon for six and a half years. They resided on Bartholomew Street in a second-floor apartment. On the day of the murder, her husband had worked then gone to Mobile One with his brother-in-law to get an amplifier. After his brother-in-law Rleft, the victim went downstairs to install the amplifier in his car. Mrs. Simon was in the kitchen cooking. Their children were in the living room watching television. As Mrs. Simon looked out the kitchen window, she could see her husband working on the car. As she watched, she observed the defendant, whom she had never seen before, “roll up” on a bicycle and shoot her husband. The defendant did not stop. Mrs. Simon could see a gun in the defendant’s hand. Mrs. Simon called 911 from the phone in the kitchen, then gathered her children. Mrs. Simon and the children went onto the apartment balcony because she wanted to give the children to her neighbor so that they would not see their father downstairs. However, the neighbor, Ms. Mosley, was downstairs. After Mrs. Simon and her children went back inside, other neighbors pounded on her door and took her children. Mrs. Simon went downstairs and stayed with her husband until the ambulance came.
Mrs. Simon testified that she had an opportunity to see the defendant as he was riding up to her husband’s car. The only clothing she could remember was a green shirt. Later, Mrs. Simon picked the defendant’s photograph out of the line-up because she remembered his face.
During cross-examination, Mrs. Simon was questioned on whether she had made a statement to police officers on the night of the murder. She recalled making a statement, but could not recall if she told them she could identify anyone; she was hysterical. She did recall telling them that she could identify the person who shot her husband if she saw him again. Mrs. Simon was also asked if she recalled making a statement on April 6th, one week after the murder. She testified that she told the police that her husband was shot twice by a thirty-eight or nine millimeter gun and that the perpetrator had medium brown skin.
| ^Defense counsel presented Mrs. Simon with a written copy of the statement she made to the police one week after the murder. According to the statement, when asked if she could identify the person who shot her husband, Mrs. Simon replied, “It would be kind of like hard cause because when it happened after I was trying to bring — I ran to the phone and to bring my children to the neighbor. That’s how I saw him going through the front court because I went to the balcony to bring my children" to my neighbor and I saw him coming - through the front court and rode back toward Mazant where the other incident happened.” Mrs. Simon’s statement also reflected that she told the police, when asked if she got a good look at the perpetrator’s face, “Maybe if I see the photos I probably could because I really didn’t look, you know, really see him that well.” (Id.). Her written statement also reflected that she told the police that she “was right downstairs in front [of ](sie) the door” when the incident occurred.
On redirect examination, Mrs. Simon testified that she could remember the face, from the forehead to the eyes, of the person who shot her husband. She could particularly remember his face because of the subject’s thick eyebrows and eyes that “sit back”.
The defendant did not testify at trial.
DISCUSSION
In the briefs filed by the appellant’s retained and appointed counsel, the sole issue raised is the sufficiency of the evidence, which, they argue, consisted solely of the identification of the defendant by Sabrina Simon. The appellant pro se alleges that the evidence was insufficient because of the inconsistencies in Mrs. Simon’s statements and the great likelihood of misidentification. Because all of |fithe *191 arguments focus on the issue of whether the State proved the defendant’s identity as the perpetrator, they will be discussed together.
This court set out the standard for reviewing convictions for sufficiency of the evidence in State v. Egana, 97-0318, pp. 5-6 (La.App. 4 Cir. 12/3/97), 703 So.2d 223, 227-28, as follows:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of act could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mus-sall; Green; supra. “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La. 1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
J197-0318 at pp. 5-6, 703 So.2d at 227-28.
Credibility determinations, as well as the weight to be attributed to the evidence, are soundly within the province of the jury’s trial function. State v. Brumfield, 93-2404, pp. 5-6 (La.App. 4 Cir. 6/15/94), 639 So.2d 312, 316. The determination of the weight of the evidence is a question of fact which rests solely with the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. State v. Silman, 95-0154, p. 12 (La.11/27/95), 663 So.2d 27, 35.
As noted above, Mrs. Simon was extensively cross-examined about her statement to the police, made one week after the murder, that she really did not get a good look at the perpetrator’s face. The jury was able to consider that statement in its totality, including the portion where Mrs. Simon told the police that she probably could identify the perpetrator if she saw a photograph. The State was also able to present to the jury that portion of Mrs. Simon’s statement wherein she told the police that there was a light right by her husband’s car and that the area was well lit. Mrs. Simon identified photographs of the scene which depicted the light pole, the black top of her husband’s car, and the location of the kitchen window from which she saw the murder. Furthermore, although there was no evidence to link the defendant to the crime except for Mrs. Simon’s identification, Ms. Mosley was able to corroborate Mrs. Simon’s testi *192 mony that the perpetrator was riding a bicycle.
The appellant pro se argues that “numerous eccentricities, unusual coincidences, and lack of corroboration” as in the case of State v. Perron, 94-0761, p. 6 (La.App. 4 Cir. 12/27/96), 686 So.2d 994, 997, writ denied, 97-0090 (La.1/24/97), 686 So.2d 869, establish that the evidence is insufficient to establish his identity beyond a reasonable doubt. In Perron the State’s evidence as to identity | «rested upon the testimony of a police officer, Len Davis, who was later convicted of murder. Officer Davis testified that the defendant, while illuminated by streetlights, discharged a riñe into a crowd of thirty to forty people only fifteen to twenty feet away. However, no one was injured, and the State presented no witnesses to corroborate Officer Davis’s testimony. Furthermore, Officer Davis testified that he and other persons fired back at the defendant as he ran behind a vehicle; however, the vehicle was never hit by any gunfire, despite the fact that police gathered over forty spent casings from the scene and the casings came from at least six weapons. This Court found that, given Officer Davis’s incredible testimony, which was contradicted by the physical evidence and uncorroborated by any other witness, no rational jury could find the defendant guilty beyond a reasonable doubt.
This case does not rise to the level of Perron. The only arguable inconsistency in Mrs. Simon’s testimony is her statement that she did not get a real good look at the perpetrator and would need a photo to identify him. The physical evidence did not contradict her testimony. A rational juror could find beyond a reasonable doubt that the defendant was the subject who shot the victim and fled on a bicycle.
The appellant pro se further argues that Mrs. Simon’s identification of his photograph is suspect because she had only a glimpse of the perpetrator, that her identification rested upon particular facial characteristics, and that none of the faces of the persons included in the photographic line-up, except his, contained these characteristics which were described by Mrs. Simon as thick eyebrows and eyes that “sit back”.
|9To suppress an identification, a defendant must prove that the identification itself was suggestive and that there was a substantial likelihood of misidentifi-cation as a result of the identification procedure. State v. Nogess, 98-0670, pp. 3-4 (La.App. 4 Cir. 3/3/99), 729 So.2d 132; State v. Hankton, 96-1538, p. 8 (La.App. 4 Cir. 9/16/98), 719 So.2d 546, 550, writ denied, 98-2624 (La.1/29/99), 736 So.2d 828. If the identification procedure is found to have been suggestive, the court must then determine whether there was a substantial likelihood of misidentification by looking to the five factors enunciated in Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), as adopted by the Louisiana Supreme Court in State v. Prudholm, 446 So.2d 729, 738 (La.1984): (1) the witness’s opportunity to view the de fendant at the time the crime was committed; (2) the degree of attention paid by the witness during the commission of the crime; (3) the accuracy of any prior description; (4) the level of the witness’s certainty displayed at the time of identification; and (5) the length of time elapsed between the crime and the identification. Hankton, supra, 96-1538 at pp. 8-9, 719 So.2d at 550. The trial court’s determination on the admissibility of identification evidence is entitled to great weight and will not be disturbed on appeal in the absence of an abuse of discretion. Nogess, supra, at p.4, 729 So.2d at 135.
The photographs used in the line-up presented to Mrs. Simons have been made an exhibit to the appeal record in this matter. A review of those photographs fails to support the defendant’s claim that his photograph is different and distinctive so as to render the identification suggestive. One of the photographs is relatively dissimilar to the rest because of the lighter skin of *193 the person depicted; however, that is not the defendant’s photograph. The balance of the six photographs depicts persons with similar facial structures and skin col- or. Notably, Imthe defendant’s eyebrows appear to be thinner than the eyebrows shown in two other photographs. The appellant’s pro se claim that the photographic identification procedure was suggestive is without merit.
Accordingly, the conviction and sentence of appellant Willie J. Gipson is hereby affirmed.
AFFIRMED.