729 So.2d 132 (1999)
STATE of Louisiana
v.
Gary NOGESS & Edward E. Thomas.
No. 98-KA-0670.
Court of Appeal of Louisiana, Fourth Circuit.
March 3, 1999.
*133 Harry F. Connick, District Attorney, Susan Erlanger Talbot, Assistant District Attorney, Orleans Parish, New Orleans, Louisiana, Counsel for Plaintiff/Appellee.
Yvonne Chalker, Louisiana Appellate Project, New Orleans, Louisiana, Counsel for Defendant/Appellant.
Elizabeth W. Cole, Stephen J. Belessis, Law Clerk, Tulane Law Clinic, New Orleans, Louisiana, Counsel for Defendant/Appellant.
Court composed of Judge STEVEN R. PLOTKIN, Judge JAMES F. McKAY III, Judge DENNIS R. BAGNERIS, Sr.
PLOTKIN, Judge.
Defendants Gary Nogess and Edward Thomas were charged by bill of information on December 10, 1996, with armed robbery, a violation of La. R.S. 14:64. Defendants pled not guilty. The trial court denied motions to suppress the evidence and identification on June 18, 1997. Following a bench trial on October 27, 1997, defendants were found guilty of simple robbery. On November 25, 1997, defendants were sentenced to serve three years in the Department of Corrections with credit for time served.

FACTS
On November 4, 1996, at approximately 10:46 p.m., the New Orleans police responded to a call of an armed robbery in the 2900 block of Tulane Avenue. The victim was robbed in her driveway in the 200 block of South Dupree Street as she exited her car. She testified that one of the perpetrators, who she identified as Gary Nogess, held a gun to her head and quietly instructed her to give him her belongings. The other perpetrator, who she identified as Edward Thomas, appeared to be scanning the area as a look-out during the perpetration of the robbery. After giving her attackers her purse *134 and cellular phone, the victim yelled to her parents to call the police. She stated the offenders were driving away from the scene in a red vehicle and she followed them in her car approximately one half of a block behind them. She witnessed them turn into the Le Petit Motel in the 600 block of South Dupree Street. They exited their vehicle and walked up to the second floor and entered a room. The victim then used a pay phone across the street to call the police.
Shortly thereafter, the police arrived in the area of the Le Petit Motel. Some of them proceeded to the motel, while others interviewed the victim at the pay phone. The police that interviewed the victim obtained a description of the perpetrators. She told them they were two males, one with a small build, light-skin, wearing a light blue jacket and a cap, the other, with a stocky build, dark-skin, wearing a jacket and blue sweatshirt with a cap.
As the other police officers approached the motel, defendant Nogess was exiting his room, followed shortly thereafter by defendant Thomas. The police asked Nogess who was driving the red vehicle. Nogess testified he admitted that he had been driving the car with Thomas as his passenger. The defendant's matched the description given by the victim. The police informed the defendants then that they were under arrest for armed robbery. Nogess said that when police asked him if he lived in the motel room he said, "officer, you can search the car, you can search the room, you can search everything."
Police officers at the scene entered the motel room from which defendants exited in order to ensure there were no other perpetrators. Defendant Nogess's light blue jacket was retrieved from off of the bed in the room. The black jacket worn by defendant Thomas was seized from inside of the car. The other clothing described by the victim was still being worn by the defendants and was also seized from the defendants subsequent to their arrests.
The victim identified both defendants at the scene as the men who robbed her. The gun used in the robbery and the victim's belongings were not found pursuant to searches of the room, the red car, and along the route taken by defendants from the victim's house to the motel.

ERRORS PATENT
A review of the record reveals no errors patent.

ASSIGNMENT OF ERROR NO. 1  NOGESS

ASSIGNMENT OF ERROR NO. 2  THOMAS
By his assignment of error number one, defendant Nogess argues that the trial court erred in denying his motion to suppress the identification and his motion for acquittal. By his assignment of error number two, defendant Thomas argues that the trial court erred in denying his motion to suppress the identification.

Identification
The victim identified both defendants in a one-on-one identification made shortly after she was robbed. In State v. Hunter, 92-2535 (La.App. 4 Cir. 4/13/95), 654 So.2d 781, writ denied, 95-1217 (La.10/6/95), 661 So.2d 464, this court stated, "One-on-one identifications are generally not favored but are permissible when justified by the overall circumstances, particularly when the accused is apprehended within a relatively short period of time after the crime has been committed and has been returned to the crime scene." citing, State v. Walters, 582 So.2d 317 (La.App. 4 Cir.1991), writ denied, 584 So.2d 1171 (La.1991). In order to suppress an identification, a defendant must prove that the identification itself was suggestive and that there was a substantial likelihood of misidentification as a result of the identification procedure. State v. Gurley, 565 So.2d 1055, 1062 (La.App. 4 Cir.1990), writ denied, 575 So.2d 386 (La.1991); citing, State v. Smith, 499 So.2d 340 (La.App. 4 Cir.1986), writ denied, 503 So.2d 14 (La.1987).
The U.S. Supreme Court in Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), as adopted by the Louisiana Supreme Court in State v. Prudholm, 446 So.2d 729, 738 (La.1984), enunciated five factors that are to be considered in determining the likelihood of misidentification as a result of the identification procedure: (1) the *135 witness's opportunity to view the defendant at the time the crime was committed; (2) the degree of attention paid by the witness during the commission of the crime; (3) the accuracy of any prior description; (4) the level of the witness's certainty displayed at the time of identification; and (5) the length of time elapsed between the crime and the identification. The trial court's determination on the admissibility of identification evidence is entitled to great weight and will not be disturbed on appeal in the absence of an abuse of discretion. State v. Bickham, 404 So.2d 929 (La.1981).
Defendant Nogess points to State v. Valentine, 570 So.2d 533, 535 (La.App. 4 Cir.1990), where two victims were present when an officer was contacted via radio and informed that a suspect had been apprehended. The officer said to the victims: "We have someone we want you to see, to see if this is, in fact, the person who robbed you." 570 So.2d at 537. The victims subsequently identified that suspect. In that case, the defendant argued that, because the victims overheard the radio call, they were predisposed to identify him. This court found that the statement by the officer seemed to point out that the suspect might not be the perpetrator, thereby balancing any potential bias resulting from the witnesses overhearing the radio call. In addition, the court also noted, "Indeed, by the very nature of a one-on-one identification occurring soon after a crime, there is a possibility that the suspect could be the perpetrator." Id.
In the instant case, after she was robbed, the victim followed the robbers, defendants Nogess and Thomas, to the motel. She stopped on Tulane Avenue across from the motel, keeping it in sight. As she called police from a pay telephone, she saw defendants walk to the second floor of the motel. Police arrived, took the victim's description of the robbers and went to the motel, while the victim remained across the street. Defendants walked down the stairs of the motel and police confronted them. The victim was subsequently transported by police to the motel. At some point prior to the victim being taken to the motel by police, she overheard a radio call that police had found two suspects who fit the descriptions she had given. At the motel, the victim identified both defendants.
If a victim of a street robbery gives police an adequate description of the person or persons who committed the offense, as the victim in the instant case did, it normally would be expected that when police pick up someone in connection with the offense, the person will fit that general description. If such a victim were to overhear a radio call that two suspects were being detained for her viewing, it would be a reasonable assumption on the victim's part to expect that the suspects would fit the descriptions given by her. The fact that such a victim would overhear not only that two suspects had been picked up, but, in addition, that they fit the descriptions given by her, does not suggest an identification of these persons as the perpetrators. The radio call merely stated the obvious, insofar as it informed the victim that the two suspects police had detained fit the descriptions given by her. The fact that a victim overhears such a call does not render a subsequent one-on-one identification any more suggestive than such identification, by its very nature, already is. There is no merit to the argument that the identification procedure was rendered suggestive because the victim overheard the police radio call.
Defendants also argue that the identification procedure was flawed because it was conducted using their driver's licenses. While the victim testified at the motion to suppress hearing that she could not recall if police showed her Nogess's driver's license prior to her identifying the two in person, at trial she stated that both licenses were shown to her after she identified both men. Nogess also testified that police took his license to the victim after he had been placed in a police car. The victim identified both defendants prior to them being placed in the police car. Therefore, the evidence established that the victim had identified both defendants prior to viewing their driver's licenses. However, it is unclear whether the victim had already identified Nogess as the gunman, and merely confirmed that identification upon viewing the driver's license, or *136 whether she had not yet identified which particular robber had been the gunman and did so only upon viewing the license.
However, even assuming the victim's identification of Nogess as the gunman was suggestive, a review of the Manson factors establishes that it was reliable, and thus, admissible. The victim testified that Nogess was only inches from her face during the robbery. She testified at the motion to suppress hearing that the motion detector light on the side of her residence had come on when she drove up in her driveway, and remained on during the robbery. The interior light in her car also was on during the robbery. Even though, when asked whether she could see that the robber had acne scars on his face the victim replied that all she could see was the gun, she subsequently stated that she described Nogess to police as having rough skin; defense counsel brought out on cross examination that Nogess had acne scars on his face. Officer Schneider stated that the defendants matched the descriptions given by the victim. The victim said she was positive that the defendants were the two who robbed her. Her identification of the two was made less than one-half hour after the robbery. All of these factors establish that the identification of Nogess by the victim was reliable, and that there was no substantial likelihood of misidentification.
As to the victim's viewing of Thomas's driver's license, there is no indication the viewing of either driver's license played a role in his identification as one of the robbers, but may have been a factor in excluding him as the gunman. Therefore, Thomas suffered no prejudice as a result of the viewing of his driver's license.

Motion for Acquittal
As part of his assignment of error number one, defendant Nogess argues that the trial court erred in denying his motion for acquittal. La.C.Cr.P. art. 778 provides in pertinent part that:
In a trial by the judge alone the court shall enter a judgment of acquittal on one or more of the offenses charged, on its own motion or on that of defendant, after the close of the state's evidence or after all of the evidence, if the evidence is insufficient to sustain a conviction.
A motion brought pursuant to this article is properly denied if the State has produced sufficient evidence to support each element of the offense charged. State v. Griffon, 448 So.2d 1287, 1293 (La.1984); State v. Henderson, 95-0267, p. 8 (La.App. 4 Cir. 4/3/96), 672 So.2d 1085, 1091, writ denied, 96-1160 (La.10/11/96), 680 So.2d 648. A denial of a motion for acquittal is reversible on appeal only if there is no evidence of an essential element of the crime. Henderson, 95-0267 at pp. 8-9, 672 So.2d at 1091.
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green, supra. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." State v. Smith, 600 So.2d 1319, 1324 (La.1992).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. *137 State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
Defendants were charged with armed robbery, a violation of La. R.S. 14:64, and were convicted of simple robbery, a violation of La. R.S. 14:65, and a responsive verdict to the charge of armed robbery. See La. C.Cr.P. art. 814(22). A judge or jury may return a legislatively provided responsive verdict, whether or not the evidence supports the verdict, as long as the evidence was sufficient to support a conviction of the charged offense and defendant fails to contemporaneously object. State v. Schrader, 518 So.2d 1024, 1034 (La.1988), cert. denied, Schrader v. Whitley, 498 U.S. 903, 111 S.Ct. 265, 112 L.Ed.2d 221 (1990); State v. Brown, 591 So.2d 791, 793 (La.App. 5 Cir.1991).
The elements of armed robbery are: (1) the taking, (2) of anything of value, (3) from a person or in the immediate control of another, (4) by the use of force or intimidation, (5) while armed with a dangerous weapon. State v. Banks, 96-652, 96-653, p. 12 (La. App. 4 Cir. 1/15/97), 694 So.2d 401, 410. The testimony of an eyewitness that she observed all the elements of the offense, coupled with an identification of the defendant as the perpetrator, ordinarily is sufficient to support a conviction. Banks, 96-652, 96-653 at p. 13, 694 So.2d at 410.
Defendant Nogess primarily attacks the identification element of the offense. The victim identified Nogess as the soft spoken individual who stuck a gun in her face, ordered her to give them everything, and took from her a cellular telephone and purse, two items of value. She said that the inside light in her car was on during the robbery, and that an outside light had come on as she drove into her driveway. She saw the perpetrators get into a vehicle, and followed that vehicle, never losing sight of it, until it pulled up to the motel. She saw the same individuals who had robbed her walking upstairs to the second floor of the motel. She identified Nogess and said the jacket, recovered from the motel room, and the cap recovered by police were the ones worn by Nogess during the robbery. The victim testified that she described Nogess to police as having "rough skin." It was brought out at trial by defense counsel that Nogess has acne scars on his face.
Although the gun and the victim's property were never recovered, considering all of the evidence in a light most favorable to the prosecution, any rational trier of fact could have found all of the essential elements of the offense of armed robbery present beyond a reasonable doubt. Therefore, defendant Nogess's conviction for the responsive verdict of simple robbery was proper, and the trial court properly denied Nogess's motion for acquittal.
There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 2  NOGESS
By this assignment of error, defendant Nogess argues that the trial court erred in denying his motion to suppress the evidence, his light blue hooded jacket, which was seized from the motel room without a search warrant.
Generally, searches and seizures made without a warrant issued on prior approval by a judge or magistrate are per se unreasonable and violative of a citizen's rights under the Fourth Amendment to the U.S. Constitution and Article 1, Sec. 5 of the Louisiana Constitution. State v. Basile, 97-1162, p. 4 (La.App. 4 Cir. 9/24/97), 700 So.2d 1062, 1065. On trial of a motion to suppress the evidence, the State has the burden of proving the admissibility of evidence seized without a warrant. La.C.Cr.P. art. 703. In reviewing a trial court's ruling on a motion to suppress, an appellate court is not limited to evidence adduced at the hearing on the motion to suppress; it may also consider any pertinent evidence given at trial of the case. State v. Guidry, 94-678, p. 6 (La.App. 3 Cir. 12/7/94), 647 So.2d 502, 507.
*138 In the instant case, Nogess, who rented the motel room along with Thomas, testified at trial that, after police asked if he and Thomas lived in the motel room he said "officer, you can search the car, you can search the room, you can search everything." A search warrant is not necessary when lawful consent is given for a search of the premises. State v. Franklin, 95-1876, p. 5 (La.1/14/97), 686 So.2d 38, 41. The burden is on the State to prove that such consent to search was given freely and voluntarily. State v. Edwards, 434 So.2d 395, 397 (La. 1983). Therefore, if Officer Sievers, who entered the room and seized Nogess's light blue jacket from a bed in the motel room, entered the room with the freely and voluntarily given consent of Nogess, the jacket was lawfully seized.
It is clear that Nogess gave the consent freely and voluntarily. Nogess argues, however, that his statement was made after the jacket was seized. At the motion to suppress hearing, Officer Donald Rouber testified that the search was not done pursuant to Nogess's consent. He simply explained that the door to the room had been left open. However, Officer Rouber did not conduct the search, Officer Siever did. It is unclear whether Nogess gave his consent to search before or after Officer Siever entered the room. Regardless, even assuming the police seized the jacket prior to Nogess giving his consent, because the jacket, which was lying on a bed in plain view, would have been discovered by police pursuant to an inevitable search conducted once Nogess gave his consent, the evidence is admissible under the "inevitable discovery doctrine." The inevitable discovery doctrine holds that evidence found as a result of a violation of a defendant's constitutional rights is admissible if it can be shown by a preponderance of the evidence that the evidence ultimately or inevitably would have been lawfully discovered. State v. Jones, 98-0963, p. 4 (La.App. 4 Cir. 6/24/98), 720 So.2d 1.
The evidence leaves no doubt that police could have, and would have, entered the motel room upon Nogess freely and voluntarily giving his consent to search, and would have seen the jacket described by the victim lying on the bed.
The jacket was properly admitted as evidence either because it was seized pursuant to a search of the motel room with prior consent by Nogess, or pursuant to the inevitable discovery doctrine by virtue of a subsequent consent to search given by Nogess.
There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 1  THOMAS
By this assignment of error, Thomas argues that the evidence was insufficient to sustain his conviction.
The law and jurisprudence applicable to the sufficiency of the evidence claim has been previously set forth. The evidence establishes that Thomas was not armed with a gun and did not directly commit the act constituting the robbery. La. R.S. 14:24 provides:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
It has already been determined that any rational trier of fact could have found all of the essential elements of the offense of armed robbery present as to defendant Nogess, supporting his conviction for the lesser offense of simple robbery.
The victim testified that Nogess and Thomas approached her. Nogess confronted her with a gun and robbed her of her purse and cellular telephone, as Thomas stood nearby acting as a lookout. She watched as Nogess and Thomas went to a waiting car and saw one of the men get inside. The victim apparently saw only one individual get into the car because, at that point, she reentered her car so she could follow the car. She followed, never losing sight of the car, up to Tulane Avenue, where defendants' car crossed the street and pulled up to the Le Petit Motel. She saw Thomas and Nogess walk up the stairs to the second floor of the motel. Police arrived, and she positively identified Thomas. A black jacket the victim claimed Thomas had been wearing at the time of the robbery was found on the back seat of the car. Nogess admitted that he and Thomas had just been out in the car. The *139 victim said that when she identified Thomas at the motel, he was wearing his blue sweatshirt. Thomas argues that the identification is suspect because the clothes recovered by police did not include a blue sweatshirt, only a blue T-shirt, and points out that Nogess testified that Thomas was wearing a blue uniform shirt with his name on it that night. However, she identified the article of clothing in evidence as having been worn by Thomas, as well as a cap and the black leather jacket. The lighting was good at the scene of the crime, and the victim testified that she had no doubt that Thomas was Nogess's accomplice.
As previously stated, the most troubling aspect of this case concerns the failure of police to recover either the victim's property or the gun used in the commission of the offense. Nevertheless, considering all of the evidence in a light most favorable to the prosecution, any rational trier of fact could have found all of the essential elements of the crime of armed robbery present beyond a reasonable doubt. Accordingly, the evidence is sufficient to sustain defendant Thomas's conviction for the lesser offense of simple robbery.
There is no merit to this assignment of error.
For the foregoing reasons, defendants' convictions and sentences are affirmed.
AFFIRMED.