Judge Joy Cossich Lobrano
|,In this juvenile delinquency case, M.B.,[1] appeals his May 17, 2016 delinquency adjudication on charges of attempted carjacking and attempted purse snatching. Finding that there is sufficient evidence to support the delinquency adjudication, and that no error in the proceedings below merits reversal, we affirm the judgment of the juvenile court.
M.B. was arrested on January 11, 2016, following an incident at the Mardi Gras Museum. On that day, V.E. and her child K.E. attended a tour at the museum, after which they returned to their vehicle. Upon entering the vehicle, a voice from the back seat, later identified as M.B., ordered V.E. and K.E. out of the car. They did not comply, and instead ordered M.B. out of their vehicle.
M.B. left the back seat and attempted to drag V.E. from the car. K.E. grabbed V.E., keeping her inside the car. After a struggle, M.B. ceased trying to remove V.E. from the car and instead attempted to grab V.E.’s purse, which was sitting on the center console. This attempt was unsuccessful, and M.B. fled.
liW-E. drove out of the area quickly, and flagged down NOPD[2] Officer Jermell Taylor (“Officer Taylor”). V.E.' described her assailant to Officer Taylor, who broadcast a description of the suspect. Officer Taylor began searching for an individual who met the description V.E. had provided. Officer Taylor saw M.B., who ran from the police car. M.B. was apprehended and returned by officers to the area near the Mardi Gras *559 Museum where V.E. had flagged down Officer Taylor. There, V.E. and KE. both identified M.B. as the person who attempted to carjack V.E.’s car and snatch her purse.
When V.E. and KE. identified him, M.B. was handcuffed beside a police car about twenty feet from where V.E. and KE. were parked in their vehicle. Officer Taylor approached V.E. and KE., and said “we caught the subject.”[3] V.E. then indicated to Officer Taylor that M.B. was the individual who attempted to carjack her and snatch her purse. KE. also identified M.B.
On January 14,2016, the State of Louisiana (“State”) filed a delinquency petition charging M.B. with attempted carjacking and attempted purse snatching. On January 29, 2016, as part of pretrial discovery, the prosecutor transmitted the thirteen body camera videos associated with this incident’s NOPD item number to defense counsel.[4]
|3M.B.’s adjudication hearing began on April 11, 2016. The State called V.E. and KE. to testify, after which the juvenile court called for a recess for the weekend. The adjudication hearing resumed on April 14, 2016. When the adjudication hearing resumed, the State called Officer Taylor and NOPD Sergeant Travis Brooks (“Sgt. Brooks”) to testify. Near the beginning of his direct examination, Sgt. Brooks revealed that in addition to reviewing his own body camera footage in preparation for the hearing, he had also reviewed Officer Taylor’s body camera footage. Upon hearing that testimony, M.B. moved for a mistrial on the grounds that M.B. had not been provided with Officer Taylor’s body camera footage. The State countered that M.B. was provided all body camera footage associated with the relevant item number through Evidence.com. The juvenile court reserved ruling on the motion until the conclusion of Sgt. Brooks’ testimony. After Sgt. Brooks finished testifying, the State rested.
A brief bench conference took place following Sgt. Brooks’ testimony, and the prosecutor accessed Evidence.com. She then discovered that two additional body camera videos were present under the relevant item number. These files were not present when the body camera footage was sent on January 29, 2016. The prosecutor then sent the defense the fifteen files associated with the relevant item number through Evidence.com. The defense noted that she received the additional videos, and the juvenile court recessed for the weekend.[5]
14On April 18, 2016, the adjudication hearing resumed. At that time, the defense re-addressed the mistrial motion, stating that the material was “Brady ”[6] and that *560 she wished to re-cross examine Officer Taylor, V.E., and K.E.[7] in light of the contents of the two additional videos. After hearing these arguments,[8] the juvenile court declared a mistrial. The defense attorney then attempted to withdraw the motion for a mistrial, after the juvenile court had already ruled, stating “I’d ask the State to agree that we would just bring everyone back for the purposes of the Defense specifically being crossed on the information....” The juvenile court refused to reconsider its ruling.
On May 17, 2016, the second adjudication hearing took place. M.B. was found delinquent for attempted carjacking and attempted purse snatching. He was sentenced to three years in the custody of Office of Juvenile Justice, with one year suspended.[9]
This appeal timely follows.
Admission of the Identifications and Sufficiency of the Evidence
First, M.B. argues that his delinquency adjudication should be reversed because the juvenile court should have granted his motions to suppress both the out-of-court and in-court identifications. Alternatively, M.B. argues that because | Hthe identification was unreliable, the evidence was insufficient to support the adjudication, and thus, the adjudication should be reversed.
“A trial court’s determination of the admissibility of identification evidence is entitled to great weight and will not be disturbed on appeal in the absence of an abuse of discretion.” State v. Kimble, 2010-1559, p. 12 (La.App. 1 Cir. 3/25/11), 62 So.3d 782, 790. When determining whether an out of court identification should be admitted, courts focus on whether police used an “impermissibly suggestive procedure” to obtain the identification. Manson v. Brathwaite, 432 U.S. 98, 107, 97 S.Ct. 2243, 2249, 53 L.Ed.2d 140 (1977). In so deciding, courts must determine if the procedure gave rise to a substantial likelihood of misidentification under a totality of the circumstances. Id. Factors to consider when making this determination include the victim’s opportunity to view the defendant, their level of attention, the accuracy of the prior description, their level of certainty, and the time between the crime and the identification. Id. “Even a suggestive out-of-court identification will be admissible if it is found reliable under the totality of the circumstances.” State v. Guy, 95-0899, pp. 9-10 (La.App. 4 Cir. 1/31/96), 669 So.2d 517, 523. This analysis applies in juvenile cases as well as criminal cases. See State ex rel. C.J., 2010-1350, p. 5 (La. App. 4 Cir. 2/9/11), 60 So.3d 46, 50.
One-on-one identification procedures,[10] like the one used in the case sub judice, are not favored, but are permissible *561 when they are justified by the overall circumstances. State v. Nogess, 98-0670, p. 3 (La.App. 4 Cir. 3/3/99), 729 So.2d 132, 134 (citations omitted); see also State ex rel. W.H., 2010-1418, p. 7-8 (La.App. 4 Cir. 4/6/11), 62 So.3d 839, 845 (applying this principle when reviewing a show-up identification that was admitted in a juvenile delinquency adjudication). One-on-one identifications are considered particularly justified when the accused is apprehended within a relatively short period of time after the crime has been committed and has been returned to the crime scene. Id. This Court has rejected the idea that one-on-one identifications are per se suggestive. See, e.g., State v. Green, 2010-0791, p. 8 (La.App. 4 Cir. 9/28/11), 84 So.3d 573, 580 (citations omitted); State v. Briley, 2013-1421, p. 16 (La.App. 4 Cir. 10/1/14), 151 So.3d 633, 644 (citations omitted).
In Nogess, this Court held that a one-on-one identification procedure was not unduly suggestive when the victim overheard on police radio that the police had apprehended suspects fitting the description by the victim. 98-0670, pp. 5-6, 729 So.2d at 135. Similarly, in the case sub judice, M.B. argues that because Officer Taylor said “we caught the subject” to V.E., the identification procedure was unduly suggestive. The Nogess Court found that it was obvious that anyone the police apprehended would be a suspect who fit the description given by the victim, and thus the radio call did not suggest that the Nogess victim should identify the defendant. Id. at 98-0670, p. 6, 729 So.2d at 135.
In finding such, the Nogess court relied on State v. Valentine, 570 So.2d 533 (La. App. 4 Cir. 1990). In Valentine, the victims were present when an officer was radioed and informed that a suspect was apprehended. Id. at 537. After the call, the officer said to the victims, “[w]e have someone we want you to see, to see if this is, in fact, the person who robbed you.” Id. (internal quotations omitted). The 17'Valentine court found that because the officer pointed out that the suspect may not be the perpetrator, the victim was not predisposed to identify the defendant. Id.
Like the statements at issue in Nogess and Valentine, Officer Taylor’s statement to the victims fails to render the identification unduly suggestive such that, under the totality of the circumstances, a substantial likelihood of misidentification resulted. Officer Taylor’s statement, whether it was “we caught the suspect” or “we caught the subject”,[11] did not imply that anyone was in custody other than someone meeting V.E. and K,E.’s description. Further, V.E. testified that during one point in the altercation, she was inches away from the perpetrator’s face, and that she was absolutely certain M.B. was the same person when she identified him, from only approximately twenty feet away, on a clear day. K.E. testified that she knew immediately upon seeing M.B. that he was the person responsible for the crime committed against them. Thus, even if the identification could be considered suggestive based on Officer Taylor’s statement, considering the Brathwaite factors, the identification was independently reliable and not so suggestive that a substantial likelihood of misidentification arose. The juvenile court did not abuse its discretion in admitting the out-of-court identification. Further, because the in-court identification was based on the out-of-court identification, the juvenile court did not abuse its discretion in admitting the in-court identification.
This assignment of error lacks merit.
*562 As to M.B.’s sufficiency of the evidence challenge, the applicable standard of review is both the, “rational fact-finder” standard of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 660 (1979) and the “clearly wrong/manifest error” standard of Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989). State in the Interest of T.S., 2014-0403, p. 1 (La.App. 4 Cir. 9/3/14), 150 So.3d 18, 20. See also La. Const.art. 5, § 10, 18 and 19; State in the Interest of Batiste, 367 So.2d 784, 789 (La.1979).[12] Under Jackson, viewing the evidence in the light most favorable to the prosecution, courts analyze whether any rational trier of fact could have found that the State proved its case beyond a reasonable doubt. State ex rel. C.N., 2011-0074, pp. 4-5 (La.App. 4 Cir. 6/29/11), 69 So.3d 711, 714.
The manifestly erroneous-clearly wrong standard has been interpreted as broader than the minimum standard mandated by the federal constitution and memorialized in Jackson v. Virginia. State ex rel. W.H., 2010-1418, p. 2 (La.App. 4 Cir. 4/6/11), 62 So.3d 839, 842. Under the manifestly erroneous-clearly wrong standard, courts do not disturb a fact-finder’s findings if, after a review of the entire |flrecord, the court concludes that the findings are reasonable and not clearly wrong. State ex rel. W.H., 2010-1418, pp. 2-3 (La. App. 4 Cir. 4/6/11), 62 So.3d 839, 843 (citations omitted). Further, great deference is given to the fact-finder on matters of credibility. Id., 2010-1418 at p. 3, 62 So.3d at 843.
An attempt occurs when a person who has the specific intent to commit a crime does or omits an act “for the purpose of or tending directly toward the accomplishing of his object....” La. R.S. 14:27. Carjacking is: (1) intentionally taking; (2) a motor vehicle as defined in La. R.S. 32:1(40); (3) belonging to another person; (4) in the presence of that person, a passenger, or someone else lawfully possessing the car; (5) by the use of force or intimidation. La. R.S. 14:64,2. Purse snatching is: (1) the theft; (2) of anything of value; (3) contained in a purse or wallet at the time of the theft; (4) from the person of another or the immediate control of another; (5) by use of force, intimidation, or snatching; (6) while not armed with a dangerous weapon. *563 La. R.S. 14:65.1. M.B. does not argue that the State failed to present evidence of each element of both crimes. Rather, M.B. argues that because the evidence against him, namely the testimony of V.E. and K.E., was based on an unreliable identification, the evidence is insufficient to adjudicate him delinquent.[13]
As noted supra, the identification meets the Brathwaite factor test for reliability. V.E. and K.E. testified that M.B. entered V.E.’s vehicle and tried to force, them out of it, and, failing that, reached for V.E.’s purse while it was sitting next to her. The juvenile court did not manifestly err in finding that the reliable | ^identification made by each of the two witnesses credibly established that M.B, was in fact the person who committed the attempted carjacking and attempted purse snatching. This assignment of error lacks merit.
Mistrial and Motion to Quash
Next, M.B. argues that the juvenile court erred in granting a mistrial, and thus subjected him to double jeopardy when he was re-adjudicated. In the alternative, M.B. argues that the district court erred by denying his motion to quash based on double jeopardy.
La. Ch.C. art. 808 provides that all the rights guaranteed to criminal defendants under the state and federal constitutions, except the right to jury trial, shall be applicable in juvenile court proceedings. See State ex rel. D.J., 2001-2149, p. 3 (La. 05/14/02), 817 So.2d 26, 28. The Fifth Amendment to the United States Constitution, as well as Article 1, § 15 of the Louisiana Constitution of 1974, prohibit placing a person twice in jeopardy of life or limb for the same offense. State v. Bridgewater, 98-658, p. 8 (La.App. 5 Cir. 12/16/98), 726 So.2d 987, 991. Double jeopardy provisions protect an accused not only from a second prosecution for the same offense, but also from multiple punishments for the same criminal act. State v. Jackson, 96-661, p. 13 (La.App. 5 Cir. 4/9/97), 694 So.2d 440, 448 (citations omitted). “When a child enters a denial to the petition, jeopardy begins when the first witness is sworn at the adjudication hearing.” La. Ch.C. art. 811.
The Louisiana Children’s Code does not specifically provide for the remedy of a mistrial.[14] However, La. Ch.C. art. 104. provides that when the Children’s InCode is silent, a juvenile court should follow the Code of Criminal Procedure. A mistrial is warranted if substantial prejudice results which would deprive the defendant of a fair trial. State v. R.W., 98-366, p. 10 (La.App. 5 Cir. 10/14/98), 721 So.2d 943, 948 (citations omitted). La. C.Cr.P. art. 591 provides:
No person shall be twice put in jeopardy of life or liberty for, the same offense, except, when on his own motion, a new trial has been granted or judgment has been arrested, or where there has been a mistrial legally ordered under the provisions of Article 775 or ordered with the express consent of the defendant.
Thus, when jeopardy has attached, a mistrial is proper only when the defendant consents or a mistrial is properly ordered under La. C.Cr.P. art. 775.
*564 In the case sub judies, jeopardy attached upon the swearing in of the first witness at the first adjudication hearing. However, the juvenile court properly ordered a mistrial under both La. C.Cr.P. art. 775(1), which allows for a mistrial when a defendant consents, and La. C.Cr.P. art. 775(3), which allows for a mistrial when there is a legal defect in the proceedings which would render a judgment reversible as a matter of law. As noted supra, M.B. originally moved for the mistrial on the grounds that he had not received Officer Taylor’s body camera footage, which his counsel repeatedly asserted contained potentially exculpatory Brady material. After the weekend recess, the juvenile judge addressed the motion. M.B., without withdrawing the motion, proposed several suggestions on how to continue the adjudication without the need for a mistrial. The juvenile judge then pointed out that if there was exculpatory evidence on the body camera footage, the only way to remedy the discovery violation, as all of the witnesses had been cross-examined and the State had rested, would be to grant the mistrial. The juvenile judge granted the mistrial motion at this point.
|12M.B. then objected and attempted to withdraw his previously granted motion for a mistrial. Despite the attempted withdrawal, M.B.’s attorney repeatedly asked that the witnesses be “brought back” for cross-examination and maintained the position that the body camera footage contained potentially exculpatory materials. Under these circumstances, it cannot be fairly said that M.B. did not consent to the mistrial. The mistrial was declared on M.B.’s own motion; prior to M.B.’s withdrawal of that motion. Because the defense did not withdraw its motion for a mistrial until after it was granted, the mistrial was properly ordered under La. C.Cr.P. art. 775(1).[15]
Even if one were to interpret M.B.’s late withdrawal of the mistrial motion as failure to consent to the mistrial, the juvenile court still properly ordered the mistrial under La. C.Cr.P. art. 775(3). The fact that possible Brady material is discovered late does not always rise to the level of a legal defect such that a verdict would be reversible as a matter of law and a mistrial is required. See, e.g., State v. Verret, 2006-1337, pp. 23-24 (La.App. 1 Cir. 3/23/07), 960 So.2d 208, 223(wherein the First Circuit Court of Appeal affirmed a district court’s refusal to grant a defendant’s mistrial motion when Brady evidence was discovered mid-trial because, pursuant to an agreement with the State, the district court instructed the jury as to the late discovered evidence). “Failure to comply with discovery merits mistrial only when the state’s conduct substantially affects the defendant’s right to prepare a defense, State v. Mitchell, 412 So.2d 1042 (La.1982); State v. DeMoss, 582 So.2d 964 (La.App. 2d Cir.1991), or when it rises to the level of a legal defect.” State v. Black, 34,688, p. 13 (La.App. 2 Cir. 5/9/01), 786 So.2d 289, 298.
In the case sub judice, M.B. was prevented from being able to cross-examine *565 witnesses on potentially exculpatory evidence—body camera footage of the identification of M.B. This is especially relevant when we consider that throughout the record below and the briefs before this Court, M.B’s entire defense has rested upon his assertion that he was misidentified. Further, as the Louisiana Supreme Court has stated regarding Brady violations “Evidence is material [and reversal warranted] only if it is reasonably probable that the result of the proceeding would have been different had the evidence been disclosed to the defense. A reasonable probability is one which is sufficient to undermine confidence in the outcome.” State v. Marshall, 1981-3115, p. 16 (La. 9/5/95), 660 So.2d 819, 826. Given the fact that the body camera footage in question contained the very identification M.B’s defense centered upon, a verdict rendered where M.B. had not had access to this particular potential Brady evidence would have been reversible as a matter of law. See Jones v. Cain, 2014-0226, p. 84 (La.App. 4 Cir. 10/8/14), 151 So.3d 781, 801 (wherein this Court found that when an identification was the only evidence tying a defendant to a crime, a Brady violation undermined confidence in the jury’s verdict, resulting in the grant of a post-conviction application). Lastly, as the mistrial was properly granted and M.B. was not subjected to double jeopardy, the juvenile court did not err in denying the motion to quash.
This assignment of error lacks merit.
JjjMotion to Recuse
Lastly, M.B. argues that the juvenile court erred in summarily denying his motion to recuse. La. C.Cr.P. art. 671 states:
A. In a criminal case a judge of any court, trial or appellate, shall be recused when he: (1) Is biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial; (2) Is the spouse of the accused, of the party injured, of an attorney employed in the cause, or of the district attorney; or is related to the accused or the party injured, or to the spouse of the accused or party injured, within the fourth degree; or is related to an attorney employed in the cause or to the district attorney, or to the spouse of either, within the second degree; (3) Has been employed or consulted as an attorney in the cause, or has been associated with an attorney during the latter’s employment in the cause; (4) Is a witness in the cause; (5) Has performed a judicial act in the case in another court; or (6) Would be unable, for any other reason, to conduct a fair and impartial trial. B. In any cause in which the state, or a political subdivision thereof, or a religious body is interested, the fact that the judge is a citizen of the state or a resident of the political subdivision, or pays taxes thereto, or is a member of the religious body is not of itself a ground for recusation.
See also State in the Interest of M.J., 2014-0622, p. 24 (La.App. 4 Cir. 2/4/15), 160 So.3d 1040, 1054, 2015-0487 (La. 1/15/16), 184 So.3d 704 (applying La. C.Cr.P. art. 671 to recusals in juvenile cases). If a motion sets forth factual allegations supporting a valid ground for recusal, the judge shall either recuse or refer the motion for hearing by another judge. Id.
In the case sub judice, the juvenile court ruled on the motion to recuse rather than referring the motion to another judge. Therefore, this Court must analyze whether the motion set forth factual allegations supporting a valid ground for recusal. The grounds set forth in M.B.’s motion for recusal were the juvenile judge’s previous adverse rulings, including the grant of the mistrial motion and the denial of a previ *566 ous motion for release. Because adverse rulings alone are not a Invalid ground for recusal, David v. David, 2014-999, p. 5 (La.App. 3 Cir. 2/4/15), 157 So.3d 1164, 1168; Earles v. Ahlstedt, 591 So.2d 741, 746 (La.App. 1 Cir.1991), the juvenile judge did not err in ruling summarily. This assignment of error lacks merit.
Decree
For the forgoing reasons, the judgment of the juvenile court is affirmed.
AFFIRMED
BELSOME, J., CONCURS IN THE RESULT
BARTHOLOMEW-WOODS, J., RESPECTFULLY DISSENTS.

. In order to protect the confidentiality of the juvenile and the victims, their names are not used within this opinion.

, NOPD is an abbreviation for New Orleans Police Department. .

. The record indicates that there is debate as to whether Officer Taylor said “suspect” instead of "subject.” The body camera footage that memorialized the identification was used to refresh the recollection of several witnesses, but was not admitted into evidence.

. These body camera videos were transmitted through Evidence.com, the NOPD's official website for storing body camera video. At the time that she sent them to defense counsel, the prosecutor downloaded the same thirteen videos to her hard drive. Although, as discussed infra, there was a problem with later discovered body camera footage, the record indicates that the defense acknowledged receipt of this body camera footage.

. We note that, throughout the record, the juvenile court emphasized that it did not believe that the prosecutor was aware that the two videos were missing from the original transmission of body camera footage.

. This is a reference to the seminal case on a prosecutor’s duty to disclose exculpatoiy evidence, Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 1195, 10 L.Ed.2d 215 (1963).

. V.E. and K.E. were released from their subpoenas after their testimony on April 14, 2016. V.E. and K.E., who do not live in Louisiana, had returned to their home several states away upon their release.

. This portion of the record is discussed in greater detail infra.

. The juvenile court also recommended non-secured care, and offered several options for M.B. to reduce the period of incarceration.

. A one-on-one identification procedure, often called a "show-up” identification, is a procedure that takes place shortly after a crime is committed, usually at the scene of the crime or the apprehension of a suspect, where victims are asked whether they recognize a person suspected to be the perpetrator of the crime. State v. Harold, 2003-0649, p. 5 n. 2 (La.App. 4 Cir. 11/12/03), 861 So.2d 262, 265.This type of identification differs from identification through a photo line-up or a physical line-up because only one individual is presented to the victim for identification. Id.

. See n. 4 supra.

. Some opinions issued by this Court apply the Jackson v. Virginia standard when analyzing sufficiency of the evidence in juvenile cases without mentioning the manifest error requirement. See, e.g., State in Interest of T.B., 2016-0438, p. 1 (La.App. 4 Cir. 9/14/16), 200 So.3d 814, 815. These opinions are correct in noting that the Jackson standard applies to juvenile cases insofar as one must view the evidence in the light most favorable to the prosecution and determine whether the State proved each element of the offense beyond a reasonable doubt. We note that, in juvenile cases, a slightly different version of the Jackson standard is applied. Though delinquency proceedings can resemble criminal proceedings, they are civil in nature. In re C.B., 97-2783, p. 17 (La. 3/4/98), 708 So.2d 391, 400 ("The hallmark of special juvenile procedures is their non-criminal nature,"). Because delinquency proceedings are civil in nature, the scope of review in Louisiana extends to both law and facts. La. Const. art. V, § 10(B) provides in pertinent part:
Except as limited to questions of law by this constitution, or as provided by law in the review of administrative agency determinations, appellate jurisdiction' of a court of appeal extends' to law and facts ... In criminal cases its appellate jurisdiction extends only to questions of law.
As a result of juvenile delinquency determinations being civil in nature, both the Jackson standard and the manifest-error standard work together to provide juveniles with constitutionally adequate appellate review. Thus, we apply the manifest-error/clearly wrong standard to determine whether sufficient evidence exists to satisfy the Jackson burden of whether any rational fact finder could have found guilt beyond a reasonable doubt. See, e.g., State in Interest of R.D., 2014-0851 (La.App. 4 Cir. 1/28/15), 158 So.3d 936, 937.

. The record indicates that V.E.’s car was not swabbed for DNA or fingerprints. Further, as noted in footnote six of this opinion, the body camera evidence was not admitted into evidence. Thus, the record on review consists solely of several still photographs of body camera footage that were admitted and the testimony of V.E., K.E., Officer Taylor, and Sgt. Brooks,

. La. Ch.C. art. 887 provides for vacating an adjudication of delinquency, but only applies when the juvenile has already been adjudicated delinquent.

. Further, based on our review of the record, it appears that after realizing that two of the witnesses had returned to their out-of-state home over the weekend, the defense believed that refusing to consent to a mistrial would allow M.B.’s adjudication to be finished more quickly. However, the defense attorney maintained the position that the body camera videos contained potential Brady evidence that she had not possessed when preparing M.B.’s defense. It appears disingenuous for an attorney to take a position that alerts the court to a legal defect and refuse to consent to the court correcting that legal defect. Under these particular circumstances, it is improper to allow the defense to benefit from its late withdrawal.